1  JOSEPH A. SALAZAR, JR., SB# 169551
     E-Mail: jsalazar@lbbslaw.com
2  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   2850 Gateway Oaks Drive, Suite 450
3  Sacramento, California 95833
   Telephone: (916) 564-5400
4  Facsimile: (916) 564-5444

5  Attorneys for North Tahoe Public Utility District and North Tahoe Public Utility
   District Board of Directors
6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  8679 TROUT, LLC a California limited     )  CASE NO.
    liability company,                        )
12                                            )  Placer County Superior Court Case No:
                    Plaintiffs,               )  TCV 1607
13                                            )
14          v.                                )  **NOTICE OF REMOVAL**
                                              )
15  NORTH TAHOE PUBLIC UTILITY               )
    DISTRICT, NORTH TAHOE PUBLIC             )
16  UTILITY DISTRICT BOARD OF                )
    DIRECTORS                                 )
17                                            )
                    Defendants.               )
18  _____)

19          TO THE CLERK OF THE ABOVE-ENTITLED COURT:

20          PLEASE TAKE NOTICE that defendants NORTH TAHOE PUBLIC

21  UTILITY DISTRICT and NORTH TAHOE PUBLIC UTILITY DISTRICT BOARD

22  OF DIRECTORS hereby remove to this Court the state court action described below:

23          1.      On June 7, 2010, a "Complaint for: (1) Declaratory Relief, (2) Inverse

24  Condemnation and Takings in Violation of the United States and California

25  Constitutions and (3) Violation of 42 U.S.C. 1983" ("Complaint") was filed in the

26  Superior Court of the State of California in and for the County of Placer, entitled

27  8679 TROUT, LLC, a California Limited Liability Company, Petitioner vs. NORTH

28  TAHOE PUBLIC UTILITY DISTRICT, a Municipal Corporation, NORTH TAHOE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  PUBLIC UTILITY DISTRICT BOARD OF DIRECTORS; and Does 1 through 10
2  inclusive, Respondents, as Case No. TCV 1607. A copy of that Complaint is attached
3  hereto as Exhibit "A."

4      2.      On June 7, 2010, a "PETITION FOR WRIT OF MANDAMUS [C.C.P.
5  Section 1094.5]" ("Petition") was filed in the Superior Court of the State of
6  California in and for the County of Placer, entitled 8679 TROUT, LLC, a California
7  Limited Liability Company, Petitioner vs. NORTH TAHOE PUBLIC UTILITIES
8  DISTRICT, a Municipal Corporation, NORTH TAHOE PUBLIC UTILITIES
9  DISTRICT BOARD OF DIRECTORS; and Does 1 through 10, inclusive,
10  Respondents, as Case No. TCV 1607. A copy of that Petition is attached hereto as
11  Exhibit "B".

12      3.      <u>Jurisdiction</u>: This action is a civil action of which this Court has original
13  jurisdiction under both 28 USC § 1331 and 28 USC § 1367(a), and is one which may
14  be removed to this Court pursuant to 28 USC § 1441(b) in that it arises under a claim
15  or right arising under the laws of the United States, namely 42 USC § 1983, and the
16  Takings Clause of the United States Constitution.. This Court also has supplemental
17  jurisdiction over the state law causes of action.

18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1       4.   <u>Intradistrict Assignment</u>: The basis for the assignment of this case to

2   Sacramento is that it is a civil action that arose in the County of Placer within the

3   meaning of Eastern District Civil L.R. 3-120(d).

4

5   DATED: June 18, 2010             LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8                              By_____/s/_____
                              Joseph A. Salazar, Jr.

9                                 Attorneys for North Tahoe Public Utility
                              District and North Tahoe Public Utility District

10                                 Board of Directors

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4820-3763-6358.1                               -3-

L. Sue Loftin, Esq. (SBN 092016)
Michael D. Stump, Esq. (SBN 042580)
Elisa M. Perez, Esq.  (SBN 255232)
Alexander S. Maniscalco, Esq. (SBN 259657)
THE LOFTIN FIRM, LLP
5760 Fleet Street, Suite 110
Carlsbad, California 92008
Tel: (760) 431-2111
Fax: (760) 431-2003

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF PLACER

JUN 0 / 2010

By K. Schwamb, Deputy

Attorneys for Petitioner 8679 Trout, LLC

FILE
BY FAX

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF PLACER

| | |
|---|---|
| 8679 TROUT, LLC, a California Limited Liability Company, | Case No.: *TCV 11067* |
| | **COMPLAINT FOR:** |
| Petitioner, | (1) **DECLARATORY RELIEF** |
| | (2) **INVERSE CONDEMNATION AND** |
| vs. | **TAKINGS IN VIOLATION OF** |
| | **THE UNITED STATES AND** |
| NORTH   TAHOE   PUBLIC   UTILITIES | **CALIFORNIA CONSTITUTIONS** |
| DISTRICT, a Municipal Corporation, NORTH | (3) **VIOLATION OF 42 U.S.C. 1983** |
| TAHOE   PUBLIC   UTILITIES   DISTRICT | Petition Filed: |
| BOARD   OF   DIRECTORS,   and   DOES 1 | |
| through 10, inclusive, | |
| | |
| Respondents. | |

Petitioner 8679 Trout, LLC, by this verified petition allege as follow:

### THE PARTIES

1.      Petitioner 8679 Trout, LLC ("8679") is a California Limited Liability Corporation doing business as Denny's Mobilehome Park (the "Park") in Placer County, State of California.

2.      Petitioner is informed and believes, and thereon alleges, that Respondent North Tahoe Public Utility District ("NTPUD") is a municipal corporation organized and existing under the laws of the State of California.

3.      Respondent North Tahoe Public Utility District Board of Directors ("Board") are the Board of Directors of the NTPUD and are sued only in their official capacity.

1

EXHIBIT *A*

4.     The true names and capacities, whether individual, corporate, or associate, governmental or otherwise, of respondents Does 1-10, inclusive, are unknown to Petitioner at this time and Petitioner therefore sues said respondents by such fictitious names. Leave of Court will be requested to amend this Petition to show their true names and capacities when the same have been ascertained. NTPUD and Does 1-10, inclusive, are sometimes hereinafter collectively referred to as "Respondents." Petitioner is further informed and believes, and thereon alleges, that Respondents, and each of them, in doing the things hereinafter alleged were acting pursuant to the course and scope of their authority as agents, servants, and employees of one another and with the permission and consent of their co-respondents.

Petitioner is informed and believes, and thereon alleges, that Respondents, and each of them, conspired and acted in concert with each other with respect to the events and happenings referred to herein, which proximately caused the damages hereinafter alleged.

## VENUE AND JURISDICTION

6.     This court has personal jurisdiction over Respondents as they are, and at all relevant times hereinafter mentioned were, public agencies, districts, municipal corporations, and administrative bodies, and/or residents of the State of California.

7.     Venue is properly placed in the County of Placer, State of California for the following reasons, among others: (s) the wrongful conduct, acts, and omissions of Respondents occurred and took place in the County of Placer, State of California; (b) the effects of such wrongful conduct and the injury resulting therefrom to Petitioner occurred in the County of Placer, State of California; (c) and the Respondents, their employees and representatives and most of the witnesses to the conduct alleged herein reside in or around the County of Placer or have their principal places of business and conduct their businesses within the County of Placer, State of California.

## GENERAL FACTUAL ALLEGATIONS

I.     Introduction

8.     Petitioner owns land and improvements in the NTPUD commonly known as Denny's Mobilehome Park. From late 2006, Petitioner has operated the Park in its present construction, with seven mobilehomes and seven legal lots. The park has existed as seven-unit

mobilehome park for approximately thirty years.

9.      Petitioner intends to sell those units within the park to resident ownership, with common ownership of the common facilities, as opposed to a rental only facility owned by Petitioner. When a mobilehome park is converted, each existing lot in the park becomes separately transferable pursuant to State law and subject to applicable covenants, conditions, and restrictions.

10.      California has adopted a comprehensive statutory scheme governing the paper conversion of mobilehome parks from rental facilities to resident-owned or condominium-style parks. The agency principally responsible for administering that statutory scheme is the California Department of Real Estate. Under state law, particularly the statutory scheme of Government Code sections 66427.5 and 66428.1, and the prohibition on fees of section 66451.6, local agencies like NTPUD are precluded from placing extraneous conditions on paper conversions to resident ownership. The scheme provides specific and detailed requirements for application approval and limits the local government's review of the application to the question of whether the requirements of Government Code section 66427.5 have been satisfied, and exists because no construction or physical development at the Park is contemplated or necessary.

11. After the lot line adjustments of subdivision, and certification of conversion to resident ownership are approved by the local government, the California Department of Real Estate regulates the marketing and sale of the individual units in the Park. The California Department of Housing and Community Development continues supervising the park's design and operation pursuant to the Mobilehome Parks Act, Cal. Health and Safety Code § 18200 *et seq.*, and Title 25 of the California Code of Regulations.

12. From the first meetings in early 2006, representatives for Petitioner discussed the proposed design, reconstruction, and conversion of the Park from a rental-only facility to resident ownership (the "Conversion") with NTPUD. Petitioner provided plans showing anticipated lot line adjustments, meter locations, and sewer and water connections; a fair reproduction of those plans, based on Petitioner's information and belief, is attached as Exhibit C. As part of that application, NTPUD was given drawings physically showing the locations. See Exhibits A and B. Respondent first demanded a new water main, in correspondence dated May 1,

3

2006, and then retracted, acknowledging that this was a continuation of service—acknowledging the only conditions of service were that owner install a separate service line on May 15, 2006. After District's design approval, HCD required certain changes to the plan.

13. In the Spring of 2009, Petitioner contacted NTPUD to obtain confirmation of service for its petition to Placer County for conversion under Cal. Gov. Code § 66427.5. *NTPUD did not require an application for service.* In response, representatives from NTPUD explained that such use was commonly applied in condominium conversions and other such changes of ownership, without physical changes to the property. NTPUD set forth requirements for viability of the future owners via proposing CC&R language, and preparing a variance application at NTPUD's recommendation. Petitioner proceeded about drafting the CC&Rs. NTPUD also wanted documentation of water usage capacity, which Petitioner provided.

14. However, on October 22, 2009, NTPUD staff changed course—requiring new sewer and water service to each parcel, within the park, exacting utility easements within the park, exacting a water main extension offsite, and demanding relocation of individual water meters outside the park. See Exhibit D. On December 15, 2009, NTPUD staff advised Petitioner to make a variance request, as part of the routine processing of the will serve letter. See Exhibit E. Petitioner complied, and submitted a detailed variance. See Exhibit F.

14. Shortly thereafter, and without further action by Petitioner, NTPUD gave written notice on February 10, 2010 that it calendared an adjudicatory meeting on the variance for February 22, 2010. See Exhibit G. District changed its course from early 2006 onward, with staff recommending denial of a variance unless the new wet utilities (water and sewer) within the interior of the park were ripped out and replaced with new lines for each individual unit, with the payment of new fees for each wet utility connection. District also changed the time of the February 22, 2010 meeting, less than two business days prior to the meeting, without giving Petitioner written notice of the change--informing Petitioner's agent via email. See Exhibit H. Petitioner called, objecting to the new time and asking for a delay or withdrawal of application because Petitioner could not be present, and Petitioner did not have time to arrange legal counsel.

4

15. District proceeded and held the hearing on February 22, 2010, before the Development and Planning Committee and denied the application—depriving Petitioner of the ability to provide additional argument and detail by changing the time.

16. Petitioner was later surprised to hear of a March 9, 2010 Board hearing, on the continued or withdrawn application. By letter dated March 3, 2010, Petitioner again requested delay and continuance from a hearing, (See Exhibit I) but on March 9, 2010, North Tahoe Public Utility District board heard the variance request anyway, and approximately two weeks thereafter, around March 23, 2010, Petitioner received a letter that the variance was denied, despite Petitioner's request for continuance or withdrawal. See Exhibit J. Such letter did not include any notice or discussion of rights of appeal, or statute of limitations.

17. Petitioner has exhausted the available administrative remedies required to be pursued by it and has no appeal nor any adequate remedy at law in that there is no appeal from a City Council decision.

## FIRST CAUSE OF ACTION

### (For Declaratory Relief Against NTPUD and Does 1 through 10)

18. Petitioner realleges and incorporates by reference each and all of the allegations contained in paragraphs 1 through 17 as if fully set forth herein.

19.     An actual controversy has arisen and now exists between Plaintiffs and Defendants, and each of them, regarding their reprective rights, duties, and obligations under California law, Government Code section 656427.5 and the Denials in that Plaintiffs contend that Defendants acted in violation of law in denying Plaintiff's request for a "will-serve letter" and variance, for the following reasons:

   i. District relies on an ordinance, namely Water Ordinance 3.04, and Sewer Ordinance 3.01.C which require specific construction or design within a property, and are thus expressly preempted as applied to mobilehome parks by the Mobilehome Parks Act, and the Department of Housing and

5

Community Development's mobilehome regulations in Title 25.

    ii.   District relies on Resolution, 2005-8, which exacts offsite improvements from property owners (actually limited to those who do not presently have access to water and sewer mains, and to developers of "vacant property") which is invalid as applied to conversions of mobilehome parks by *Sequoia, El Dorado*, Cal. Gov Code § 66427.5, and Cal. Gov. Code § 66451.6.

    iii.   District imposes development-related connection fees, as regulated by Cal. Gov. Code § 66013 and which are in violation of California law when applied to mobilehome park conversions--namely Cal. Gov. Code § 66451.6.

    iv.   Under California law, a local agency's consideration of entitlements surrounding mobilehome park conversion to resident ownership is governed by Government Code section 66427.5, which provides specific and detailed requirements for approval and limits review of the application to the question of whether the requirements of Government Code section 66427.5, and the other conditions of Government Code section 66428.1 by implication, have been satisfied.

Defendants dispute these contentions.

20.    Plaintiffs desire a judicial determination of the respective rights and duties of Plaintiffs and of Defendants with respect to California law, Government Code section 66427.5, and the District actions.  In particular, Plaintiffs desire a declaration that: (i) compliance with Government Code section by the District is mandatory; (ii) in refusing the will-serve letter and denying the variance request, Defendants abused their discretion; and (iii) said abuse of discretion thereby renders the denials invalid

21.    Such a declaration is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights and duties with respect to California law, Government Code section 66427.5 and the Denials.

### SECOND CAUSE OF ACTION

6

**(For Inverse Condemnation and Takings Against NTPUD and Does 1-10)**

22.     Plaintiffs re-allege and incorporate by reference each and all allegations contained in paragraph numbers 1 through 22, as if set out in full.

23.     Plaintiffs have a legal right to convert the mobilehome park to resident ownership. NTPUD's adoption of the Denials amounts to an unconstitutional taking under the Takings Clause of the Fifth Amendment to the United States Constitution and Article I, Section 19 of the California Constitution.  By denying the requests, NTPUD exceeded its authority and jurisdiction and interfered with the statutory and regulatory process as established by the legislature.   The denials frustrate uniform standards designed to regulate mobilehome parks.

24.     The Denials work an unconstitutional taking of Plaintiffs' private property for public use.  State law prohibits NTPUD from enacting the denials altogether.  Plaintiffs are informed and believe, based on such information and belief allege, that Defndants denied the will-serve request and variance request knowing that they had no power to do so and that they were advancing no legitimate governmental interest.  The denials are clearly unlawful in light of appellate court opinion and California statutory law and are so unreasonable from a legal perspective that they are clearly intended solely for the purpose of delay and obstruction contrary to law.

25.     The Denials prevent Plaintiff from exercising a legitimate right to convert the Park to resident ownership and force plaintiffs to bear a disproportionate share of public burdens that should be borne by the public as a whole.  The economic impact to Plaintiffs is substantial in terms of the economically viable use of the Park and the NTPUD has interfered with distinct investment-backed expectations.  The nature of the governmental action is particularly egregious considering that Defendants denied the will-serve request and variance request knowing that they had no power to do so and that they were advancing no legitimate governmental interest.

26.     Plaintiffs have suffered and continue to suffer damages, in an amount to be proven at trial, as a result of NTPUD's unconstitutional taking of their private property.

7

Plaintiffs' lawful use of their property has been unlawfully blocked by the denials of the will-serve request and variance request, resulting in damages in an amount to be proven at trial but believed to be not less than $500,000.

### THIRD CAUSE OF ACTION

**(Under 42 U.S.C. § 1983 for Violation of the Fourteenth Amendment**

**Against NTPUD and Does 1-10)**

27.     Plaintiffs re-allege and incorporate by reference each and all allegations contained in paragraphs 1-26 as if set forth in full.

28.     In handling Plaintiffs Applications in the manner described above, Defendants interfered with Plaintiffs' property rights and acted unreasonably and in an arbitrary and capricious manner.

29.     In handling Plaintiffs' Applications in the manner described above, the NTPUD acted under color of a statute, ordinance, regulation, custom, or usage of state law.

30.     The NTPUD's handling of Plaintiffs' Application in the manner described above violates rights secured by the Constitution and laws of the United States, including but not limited to Plaintiffs' substantive due process rights guaranteed by Fourteenth Amendment of the United States Constitution.

31.     Plaintiffs' have a viable claim under 42 U.S.C. § 1983 because the NTPUD violated Plaintiffs' constitutional rights by unreasonably, arbitrarily, and capriciously denying Plaintiffs' Applications. The violation was unconscionable because the NTPUD knew, or should have known, that its action were contrary to governing law. Under state law, the NTPUD has no legitimate governmental interest in denying the applications upon the bases asserted.

32.     As a result of the NTPUD's unconstitutional actions, Plaintiffs' are prevented from converting the park to their damage in an amount to be proven at trial.

33.     As a result of the NTPUD's actions, Plaintiffs are entitled to an award of attorneys' fees under 42 U.S.C. § 1988(b).

Wherefore, Petitioner prays for judgment as follows:

1.     For a judicial declaration of the respectrive rights and dutries of Plaintiffs

8

and of Defendants with respect to California law, Government Code section 66427.5, and the denying of the will-serve request and variance request.   In particular, Plaintiffs request a declaration that: (i) the NTPUD's compliance with Government Code section 66427.5 and California law is mandatory; (ii) in denying the will-serve request and variance request, Defendants abused their discretion; and (iii) said abuse of discretion thereby renders their denials invalid.

2.   For recovery of damages from Defendants in an amount to be proven at trial;

3.   For an award of costs of suit, expenses, and reasonable attorneys' fees; and

4.   For such other and further relief as the court deems just and proper.

Dated: June 7, 2009

THE LOFTIN FIRM

By:

Alexander S. Maniscalco
Attorneys for Petitioner

9

## VERIFICATION

I, John Anderson, declare:

I am member of 8679 Trout, LLC, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the Verified Petition for Writ of Mandamus in this action and I know the contents thereof. The matters therein stated are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 7, 2010, at _San Francisco_, California.

_____
John Anderson, Member
8679 Trout, LLC

## List of Exhibits

| | |
|---|---|
| Exhibit A | May 1, 2006 Letter, NTPUD |
| Exhibit B | May 15, 2006 Letter, NTPUD |
| Exhibit C | Plans for Park as of May 16, 2006 |
| Exhibit D | October 22, 2009 Letter, NTPUD |
| Exhibit E | December 15, 2009 Letter, NTPUD |
| Exhibit F | Petitioner's Variance Request |
| Exhibit G | February 10, 2010 Letter, NTPUD |
| Exhibit H | February 18, 2010 Email, NTPUD |
| Exhibit I | March 3, 2010 Letter, Petitioner |
| Exhibit J | March 9, 2010 Letter |
| Exhibit K | HCD Information Bulletin 2008-10 |
| Exhibit L | Letter from Lisa Campbell, 2009 |

1

**Exhibit A**



# NORTH TAHOE
# PUBLIC UTILITY DISTRICT

May 1, 2006

Attn: John Anderson
8679 Trout LLC
P.O. Box 3705
Olympic Valley, CA  96146-3705

Re:   8679 Trout Avenue – APN 090-124-024 – Water and Sewer Services for
       Reconstructed Mobile Home Park

Dear Mr. Anderson,

Thank you for contacting the District regarding the proposed project at the property
referenced above.  Per the email you sent on April 4, 2006 and our telephone
conversations, "the project is an upgrade of an existing 7 unit trailer park to meet TRPA
grading requirements… (and) in the revised layout, there will be 7 trailers only with the
laundry being removed".

One of the questions you had was regarding the size of the existing water meters at this
property.  This property is currently served with two water meters, both of which are
5/8".  Based on the spreadsheet you had sent me with the proposed number of plumbing
fixtures in each of the 7 trailers, a 1 ½" water meter will be required to serve this project.
(See enclosed fixture count sheet).  Therefore, a new 1 ½" water service will be required
to serve this property, and both of the existing 5/8" water services will be required to be
abandoned at the water main, at the expense of the owner.

In order to confirm that no fire sprinkler systems or on-site fire protection systems are
required, please submit a statement from the North Tahoe Fire Protection District that the
proposed project is exempt from such fire protection system requirements.

Currently a 1" water main runs along the rear of this property line.  This size of this water
main is not adequate to serve the increased demand of the proposed project.

In order to serve the proposed project, the owner shall be required to extend a new 6"
water main in Trout Avenue to serve this project.  Another developer currently has plans
to extend a 6" water main in Trout Avenue from Fox Street west approximately 100 feet,
which is scheduled to be constructed during the summer of 2006.  It shall be the
responsibility of the owner for 8679 Trout to extend a new 6" water main in Trout

S:\APN 09\090-124-024\sewer and water.exc.doc
PO Box 139, Tahoe Vista, CA 96148 • (530) 546-4212 • FAX (530) 546-2652 • 875 National Ave.
e-mail: ntpud@ntpud.org • website: www.ntpud.org

Avenue from the end point of the new main in Fox westwards to the western edge of the property referenced above, for a total distance of approximately 250 feet. (See enclosed schematic drawing, showing the location of existing and proposed water mains). The new water main shall be constructed per District standards and specifications, and upon completion and acceptance, the new water main shall be dedicated to the District. The new 1 ½" water service will be required to be connected to the new 6" water main in Trout Avenue.

There are currently two sewer laterals that front this property. Standard District procedures require that all unused sewer laterals that front a property must be abandoned at the main, at the expense of the owner, per District standards. However, in an effort to facilitate future redevelopment, changed use at this property, or property line adjustments, the District shall waive this requirement. Therefore, the property owner shall be allowed to use one or both of the existing sewer services that front this property.

In order to facilitate the construction of the proposed project and the necessary water facilities to serve this project, it is recommended that you meet with District staff to discuss the requirements set forth in this letter. To set up such a meeting, you may contact Jessica Morris, Administrative Assistant, at (530) 546-4212.

Additionally, the owner of this property must complete and return the enclosed Fee Acknowledgement Form and submit the $2,000.00 security deposit to the address below (per NTPUD Ordinance 339).

> North Tahoe Public Utility District
> Attn: Engineering Division
> P.O. Box 139
> Tahoe Vista, CA 96148

Upon completion of the project, the security deposit will be returned, minus outstanding/unpaid charges. Please be aware that progress on your project may be delayed until the Fee Acknowledgement Form and security deposit have been received.

Should you have any questions, please contact me at (530) 546-4212.

Sincerely,

Coral R. Taylor
Assistant Engineer

/ct

S:\APN file\090-124-024\sewer and water svc.doc

cc:    Leon C. Schegg, Public Works Director/Assistant GM
Steve Rogers, General Manager/CEO
Robert Hopkins, Utility Operations Manager
Jessica Morris, Administrative Assistant
Bob Orr, Public Works Construction Inspector
Steve Hook, North Tahoe Fire Protection District, P.O. Box 5879, Tahoe City, CA 96145
Robertson Engineering Inc., 2300 Bethards Drive, #L, Santa Rosa, CA 95405
Lovett Silverman Construction Consultants, 333 Bryant Street, Suite 310, San Francisco, CA 94107

Enclosures (3) -   Fixture Count Sheet
- Schematic drawing of existing and proposed water mains
- Fee Acknowledgement Form

RESOLUTION NUMBER 2006-8
A RESOLUTION OF THE
NORTH TAHOE PUBLIC UTILITY DISTRICT
ESTABLISHING POLICY DIRECTION RELATED TO THE NEED FOR
REHABILITATION OF EXISTING KINGS BEACH GRID WATER SYSTEM

WHEREAS, the District Board of Directors' review and analysis of the existing Kings Beach Grid water system has shown that it is outdated and in need of rehabilitation; and

WHEREAS, consistent with District's Engineering staff review and analysis of the condition of the kings Beach Grid water system as presented to the Board on May 10, 2005, the Board of Directors has found that it is in the best interest of the District to make the following policy determinations that provide staff with direction:

1. The KB Grid water system is an existing and developed system serving the properties within its boundaries and, as such, rehabilitation and relocation of the backyard water mains to the street is a District obligation.

2. Existing water customers have been served by backyard laterals connected to the backyard water main. Installation of new front service laterals is necessary for the property owner to continue to have water service. The costs associated with installation of front service laterals to point where it connects with District water system is a property owner obligation.

3. Developers of vacant properties within the KB Grid Water system who have a need for immediate access to an existing backyard water main may connect to the existing water system on an interim basis subject to the following conditions:

    a. Recordation of a 7.5 feet easement in favor of the District on the rear portion of Developer's property to allow the District access to maintain water main during the interim time period. The District will abandon easements for individual segments of the backyard water system at such time as all users of the segment have connected to front street systems and the segment is not required for the overall District water system; and

    b. Developer installs at Developer's expense both the necessary service lateral to connect to existing backyard water main and a dry front service lateral for future connection to front street water mains; and

    c. Developer must comply with all District design standards; and

    d. Developer provides the District with an easement in the front of the property, if necessary, for maintenance.

4. To continue the District's current water main extension policy and practice requiring property owners that do not presently have access to the District's existing water/sewer mains to build water/sewer main extensions necessary to serve that property to the District standards. Such water main extensions may include dedication of easements and/or related permits to accomplish this construction, and such construction is done at the developer's expense. The District's policy continues to be that construction costs necessary to support new development that cannot access existing water mains should be borne by the developer and not by existing District ratepayers.

NOW THEREFORE, the General Manager/CEO is directed to develop and implement a KB Grid Water System Rehabilitation program to resolve this issue consistent with the policy determinations made by the Board of Directors. Implementation of such program will require subsequent Board actions and approvals. The program shall include the engineering design plan for water system rehabilitation and relocation and a financing strategy and plan to pay for costs of said program while providing interim provisions allowing for development of vacant parcels within the KB Grid that have access to existing water mains.

PASSED AND ADOPTED THIS 10TH DAY OF MAY, 2005, BY THE FOLLOWING ROLL CALL VOTE:

AYES: Bergmann, Mooney, Schwartz, Lewis, Lanini

NOES: None

ABSENT: None

_____
S. Lane Lewis, President

ATTEST:

_____
Leon C. Schegg, Acting Clerk of the Board

**Exhibit B**



# NORTH TAHOE
# PUBLIC UTILITY DISTRICT

May 16, 2006

Attn: John Anderson
8679 Trout LLC
P.O. Box 3705
Olympic Valley, CA  96146-3705

Re:    8679 Trout Avenue – APN 090-124-024 – Water and Sewer Services for
       Reconstructed Mobile Home Park

Dear Mr. Anderson,

Thank you for meeting with my supervisor, Lee Schegg, and me to discuss the proposed
project at the property referenced above. Per our discussion, this project will consist of
an upgrade of an existing 7 unit trailer park to meet TRPA grading requirements, to
replace the existing utilities on site, and to replace the previous trailers with more modern
mobile homes.

This letter was written in response to your fax sent on May 5 and to summarize the
conclusions discussed at our meeting.

This property is currently served by two ¾" water meters, which was verified by District
staff.

The owner was previously required to extend a new 6" water main in Trout Avenue to
serve this project. However, after reviewing this requirement with respect to the Kings
Beach Grid Policy (enclosed), the property owner will not be required to extend the water
main in Trout Avenue.

The property owner will be allowed to continue to receive service from the existing rear
property water main subject to the following conditions:
1. The property owner installs a separate (dry) service line from the front property
   line to the interior of the structures' foundation(s) for future connection. It is
   recommended that the owner connect this dry service line to the existing
   plumbing within the foundation(s) and install a valve in the 'off' position so that
   the service line is empty (dry). (This will avoid the potential for bacterial
   growth). The end of the service line at the front property line shall be capped and
   boxed in a District-approved water meter box.

S:\APN 090\090-124-024\sewer and water swc2.doc
PO Box 139, Tahoe Vista, CA 96148 • (530) 546-4212 • FAX (530) 546-2652 • 875 National Ave.
e-mail: ntpud@ntpud.org • website: www.ntpud.org

2. The owner understands that the cost of meeting the above conditions shall be borne by the owner, and not the District.

As a water main extension will not be required, the property owner will no longer be required to complete and submit a Fee Acknowledgement Form or the $2,000.00 security deposit.

Should you have any questions, please contact me at (530) 546-4212.

Sincerely,

Coral R. Taylor
Assistant Engineer

/ct

cc:     Leon C. Schegg, Public Works Director/Assistant GM
        Steve Rogers, General Manager/CEO
        Robert Hopkins, Utility Operations Manager
        Reeca Jurach, Utility Operations Coordinator
        Jessica Morris, Administrative Assistant
        Bob Orr, Public Works Construction Inspector
        Steve Hook, North Tahoe Fire Protection District, P.O. Box 5879, Tahoe City,
            CA 96145
        Robertson Engineering Inc., 2300 Bethards Drive, #L, Santa Rosa, CA 95405
        Lovett Silverman Construction Consultants, 333 Bryant Street, Suite 310, San
            Francisco, CA  94107

Enclosures (1) - Resolution Number 2005-8 "A resolution of the North Tahoe Public
                Utility District establishing policy direction related to the need for
                rehabilitation of existing Kings Beach Grid water system"

S:\APN file\090-124-024\sewer and water svc2.doc

**Exhibit C**



**Exhibit D**



**PUBLIC UTILITY DISTRICT**

October 22, 2009

John Anderson
Denny's Trailer Park
548 Brannan Street, Suite 311
San Francisco, CA 94107

RE:   Request for Information for Denny's Trailer Park, 8679 Trout Avenue, Kings
      Beach California- APN 090-124-024

Dear Mr. Anderson,

This letter is response to requests made on your behalf by Susan Simon of Simon
Environmental Planning.

The proposed parcel line adjustments of Placer County project PSUB T20090079 will
create seven separate parcels. The resulting parcels will be eligible for service once the
sewer and water facilities for each parcel have been configured per District Ordinances.
The new parcels will be eligible once the following have been completed:

- The existing sewer and water entitlements shall be transferred to one of the
  proposed parcels. The remaining six parcels shall execute a District Application
  for Service.
- A separate and independent sewer lateral and water service shall be provided for
  each parcel resulting from this project. Furthermore, all service lines shall be
  constructed within the parcel or within a utility easement satisfactory to the
  District.
- Denny's Trailer Park will extend the 6" water main in Trout Avenue from it's
  current termination point near Fox Street to the western boundary of parcel 090-
  124-024.
- The point of service for each parcel will be relocated to the water main in Trout
  Avenue.
- The property owner/developer shall be required to adhere to all District
  ordinances, standards, specifications, details, and requirements, and will be
  subject to all relevant inspections and fees generated by the proposed project.

District Ordinances require individual water services and sewer laterals for each parcel
unless they are under common ownership. District Ordinances allow properties with

R:\APN file\090-124-024 - Dennys trailer park\Eng Letter 101909.doc

multiple units under the same ownership to be served by one water service and one sewer lateral, but if these multiple units are divided and sold separately, each unit shall be served by its own water service and sewer lateral.

Section 3.01.C of the District's Sewer Ordinance requires a separate sewer lateral for every parcel, and that no land division resulting in structures in different ownership being served by the same service lateral shall be allowed:

> *A separate and independent sewer lateral shall be provided for every parcel. Where more than one structure or building exists on a parcel and are under common ownership, they may share a common service lateral.*

> *Where service by an independent sewer lateral is impossible or not practical, the Manager may allow service through a lateral constructed on an easement satisfactory to the District. Nothing herein shall allow structures in different ownership to be served by the same service lateral.*

> *No land division resulting in structures in different ownership being served by the same service lateral shall be allowed. Prior to the recording of any final map resulting in the creation of parcels, which if sold to different persons would result in structures in different ownership's being served by the same service lateral, independent service to said structures shall be provided in conformance with the provisions of this Ordinance. In lieu of construction, submission and approval of plans and bonding for completion acceptable to the Manager shall be accepted.*

Section 3.04 of the District's Water Ordinance requires a separate water service for every parcel, and that no land division resulting in structures in different ownership being served by the same water meter shall be allowed:

> *Two or more structures on the same parcel or contiguous parcels in the same ownership as of the effective date of this Ordinance may be served by one meter. Should the parcel be split and sold to another owner, each resulting parcel shall have a separate water service. Connection charges shall be paid as shown in EXHIBIT "A", WATER RATES, for each structure built or existing on the parcels. When a structure exists or is placed on each parcel, a new connection charge is due, and a credit for the original connection fee paid shall be given.*

> *The installation and/or paying the costs for the District to install a new meter to serve the resulting parcel shall be accomplished prior to the effective date of the parcel split or close of escrow in the event of a sale. Responsibility for all charges, connection fees, and meter installation fees shall be the responsibility of the property owner of record.*

Please contact me discuss the required actions listed above and I will revive the Line Extension Agreement drafted earlier for the water main extension. If you are unable to complete these items, you may request a Variance to District Ordinances.

The District has not inspected or approved the existing sewer collection and water distribution systems installed on the subject parcel. No deficiency notices were issued because the District's procedures, i.e. Plan Review Request, Placer County's Notice of Intent to Serve application, and complete project plan submission, have not taken place. The District takes no responsibility for the quality, material, or manner of construction of the sewer and water facilities within the subject parcel.

Should you have any questions, please contact me at (530) 546-4212.

Sincerely,

David T. Berry
Engineering Technician

/dtb

cc:     General Manager/CEO
        Associate Engineer
        Simon Environmental Planning
        Maywan Krach, Community Development Technician, Placer County

R:\APN file\090-124-024 - Dennys trailer park\Eng Letter 101909.doc

**Exhibit E**



**north tahoe**
PUBLIC UTILITY DISTRICT

December 15, 2009

Placer County Community Development Resource Agency
Maywan Krach, Community Development Technician
3091 County Center Drive, Suite 190
Auburn, California 95603

RE:   Denny's Trailer Park (PSUB T20090079), 2nd Submittal
       8679 Trout Avenue, Kings Beach CA – APN 090-124-024

Dear Ms. Krach:

The District has reviewed and commented on the planning submittal. Specifically, the applicant's response to the North Tahoe Public Utility District's (District) response to Placer County's 1st Submittal in the letter dated March 27, 2009:

> *"A variance application has been submitted to the District to allow for a shared sewer lateral for all 7 parcels as opposed to the required independent sewer laterals. The variance will require the applicant to address this within the CCRs, requiring the Homeowners Association to be responsible for maintenance of the sewer lateral on the interior of the parcel."*

A Variance Application has not been received by the District.  Once submitted, the variance can be presented to the District's Board of Directors for consideration.

> *"The applicant has given the District information to review regarding sewer and water capacity requirements."*

The information provided does not meet the District's standards.  As previously conveyed to the applicant and the County, the District needs to complete a standard plan review of the new construction on the parcel(s) before approving connection to the sewer and water systems.  The following documentation is required for the review:
1. Site plan showing all sewer and water facilities (existing and proposed)
2. Topography and proposed slopes and inverts of sewer facilities
3. Floor plans of each unit clearly showing all proposed fixtures including hose bibs, floor drains, etc.
4. Sewer and water capacity requirements
5. All items must be prepared and wet stamped by a licensed civil engineer.

\\ntpudserver02\NewMom\APN file\090-124-024 - Dennys trailer park\P County Response PSUB T20090079 2nd submittal.doc

AS-BUILT plans of the sewer collection and water distribution systems shall be submitted to the District, in a digital and a reproducible format, prior to acceptance of final completion of the proposed project.

As described in the attached letter to the applicant, the proposed parcels will be eligible for service once the following conditions have been met:

- The existing sewer and water entitlements shall be transferred to one of the proposed parcels. The remaining six parcels shall execute a District Application for Service.
- A separate and independent sewer lateral and water service shall be provided for each parcel resulting from this project. Furthermore, all service lines shall be constructed within the parcel or within a utility easement satisfactory to the District.
- Denny's Trailer Park will extend the 6" water main in Trout Avenue from its current termination point near Fox Street to the western boundary of parcel 090-124-024.
- The point of service for each parcel will be relocated to the water main in Trout Avenue.
- The property owner/developer shall be required to adhere to all District Ordinances, standards, specifications, details, and requirements, and will be subject to all relevant inspections and fees generated by the proposed project.

District inspection of sewer collection and water distribution systems will be required to determine if the property is in compliance with District Ordinances.

The owner/developer is responsible for all costs associated with the connection of the services to the proposed project including, but not limited to, the District's costs to review, approve, inspect, and document the improvements.

Should you have any questions or require additional information, please contact me at (530) 546-4212.

Sincerely,

David T. Berry
Engineering Technician

cc:     General Manager/CEO
        Administrative Assistant

Enclosure (1): October 22, 2009 letter to John Anderson

**Exhibit F**

**Applicant**

Name: _Susan Simon_     Phone: _530 577-0406_

Address: _PO BOX 113, SLT, CA 96156_

Legal Owner(s) of Property                        JOHN

Name: _8679 Trout LLC. / Anderson_ Phone: _510 418-9514_

Address: _c/o Ziesing, 107 REED RANCH RD., Tiburon CA_
_94920_

Property Address: _8679 Trout, Kings Beach CA 94920_

Assessor's Parcel Number: _90-124-24_

Describe Variance Request:

_Refer to attachment A - cover letter_

What is the minimum variance that will alleviate hardship?

_Refer to Attachment A - letter_

Are there special circumstances which prevent compliance with the District's Ordinances?
If so, explain

_Refer to Attached cover letter_

Site Map (If applicable) Attached?        Yes _X_        No

I certify that the information given above is true and complete to the best of my knowledge and I understand the fee is non-refundable. I have read the attached conditions and my signature below signifies my understanding.

Applicant's Signature: _____

Legal Owner Signature: _____

Other Owner Signature: _____

Print Name: _John Anderson_    Date: _10/20/09_

Print Name for 8679 Trout LLC    Date:

Print Name: _____    Date: _____

**VARIANCE REQUEST APPLICATION**

NORTH TAHOE PUBLIC
UTILITY DISTRICT
875 National Avenue
PO Box 139
Tahoe Vista, CA 96148

Phone: 530-546-4212
Fax: 530-546-2662
Email: ntpud@ntpud.org

**NOTE:**
THE VARIANCE REQUEST FEE OF $1,000 MUST BE SUBMITTED WITH THE APPLICATION.

THIS FEE IS NON-REFUNDABLE. THERE ARE NO GUARANTEES THAT YOUR APPLICATION WILL BE APPROVED.

---

| (For NTPUD Internal Use Only) Description (Section) | Required | Requested | Received |
|---|---|---|---|
| Easements | | | |
| Standard Details | | | |
| Sewer Ordinance _3.01.C_ | | | |
| Water Ordinance _Resolution 2005-8_ | | | |
| Other | | | |

Date Appl. Rcvd: _1/22/10_

Filing Fee Paid: $ _1,000—_

Receipt No.: _A-23533_

On _3.9.2010_ the Engineering Department: Approved (Denied) this application subject to the conditions attached.
(circle one)

cc: General Manager/CEO
Assistant General Manager
Engineering Department

_David T Berry_    Engineer/Reviewer    _3.9.2010_
Date

R:\Engineering\Forms\Variance\Variance Request Form.doc

P. 2

Oct 19 09 01:12p



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

Dave Berry
North Tahoe Public Utility District
PO Box 139
Tahoe Vista, CA 96148

January 16, 2010

Dear Mr. Berry,

8679 Trout Avenue LLC (Owner) submits this letter as a request for a variance to the following two requirements of the North Tahoe Public Utility District (NTPUD) sewer and water ordinances.  These requirements were triggered by the submittal of a major subdivision application and were listed in a letter from you dated October 26, 2009 outlining compliance to NTPUD ordinances.  The Owner requests a variance to the following requirements:

    a. Extension of the 6" water main in Trout Avenue from its current termination point near Fox Street to the western boundary of parcel 190-124-024

    b. The requirement to provide a separate and independent sewer lateral for each parcel resulting from this project.

Denny's Trailer Park is an existing seven unit mobile-home park operating under a permit from the California Department of Housing and Community Development (HCD).  The park is comprised of seven legal non-conforming lots of record which the owner proposes to reconfigure through a major subdivision process, to conform to the layout of the existing manufactured homes.  This will allow the owner to sell the individual home sites to the residents, thereby converting the rental park to resident ownership.  The proposed subdivision does not involve any physical changes to the property but merely a change in the form of ownership of the park.  Instead of one owner, there will now be seven individual owners governed by a homeowners association.



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

The park was reconstructed in 2005/2006 under a HCD permit.   Reconstruction of the park included replacing the original 7 substandard trailers with new manufactured housing.  A commercial laundry and public bathroom were removed permanently allowing water usage on the property to decrease dramatically.  NTPUD has always supplied sewer and water service to the park and continues to do so today.

At the time of reconstruction and in agreement with NTPUD, the Owner was allowed to continue to receive service from the existing water main to the rear of the property.  However, a separate dry service line was installed from the front property line to the interior of the structures foundations allowing for a future connection to the 6" water main proposed in Trout Avenue.  Since this was not a new development project nor an expansion of an existing development, it was determined the Owner would not be responsible for extending the water main in Trout Avenue to service his property.  Refer to the attached letter from NTPUD dated May 16, 2006, from Coral R. Taylor, Assistant Engineer.

The park is currently serviced by two ¾" meters and even at full occupancy, only one is being used.  There have been no issues or complaints concerning water pressure on the property.

The Owner has reviewed the requirements included in your letter dated October 26, 2009 and responds with the following:

- The existing sewer and water entitlements shall be transferred to one of the proposed parcels.  The remaining six parcels shall execute a District application for Service.

  *Response:  The owner will comply with this requirement.*

- A separate and independent sewer lateral and water service shall be provided for each parcel resulting from this project.  Furthermore, all service lines shall be constructed within the parcel or within a utility easement satisfactory to the District.

  *Response:  The Owner will install separate water meters for each parcel resulting from the subdivision of the property.  However, a variance is requested regarding the provision of a separate sewer lateral for each*



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

*parcel. The Owner requests to maintain the current sewer distribution system, allowing all seven units which after subdivision approval, will be on 7 separate parcels, to connect to a single sewer lateral. At the request of NTPUD the Owner will record a Hold Harmless agreement on each parcel resulting from the proposed lot reconfiguration/subdivision which will provide notice to all subsequent purchasers of the property or any units on the property of the existence of a shared sewer lateral and their obligation to indemnify the District against all liability resulting from any sewer backups or spills on the property. The Owner will also update the CC & Rs to include language regarding the Hold Harmless Agreement.*

- Denny's Trailer Park shall extend the 6" water main in Trout Avenue from it's current termination point near Fox Street to the western boundary of parcel 190-124-024.

  *Response: The Owner requests a variance from this requirement. As demonstrated above, this is not a new project and the reconstructed project has not increased water demand over what existed previously. In fact since redevelopment water usage has decreased. The reconstructed park consists of 7 new manufactured homes designed to the efficiency of HCD standards which require low consumption water fixtures. As demonstrated by the attached letter from John Anderson, owner and project engineer, removal of the commercial laundry and use of low consumption water fixtures has reduced water consumption by one half from prior to redevelopment of the park. There are two existing ¾" water meters on the property and now only one is necessary to service all seven units. Therefore, the existing smaller main to the rear of the property has been sufficient in servicing this property.*

- The point of service for each parcel will be relocated to the water main in Trout Avenue.

  *Response: As discussed above, the Owner is requesting a variance to the requirement of extending the water main down Trout Avenue.*

- The property owner/developer shall be required to adhere to all District ordinances, standards, specifications, details and requirements and will be



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

subject to all relevant inspections and fees generated by the proposed project.

*Response: With the exception of the variance requests to the requirements of extending the water main down Trout Ave and providing separate sewer laterals for each parcel, the Owner will comply with the ordinances, standards, specifications, details, and requirements outlined in your letter dated October 26, 2009.*

Please find the following attachments:

- NTPUD Variance Request Application

- $1,000 filing fee

- Copy of a letter from Dave Berry, NTPUD dated October 26, 2009.

- Copy of a letter from NTPUD dated May 16, 2006.

- Copy of the Utilities plan originally submitted in 2006.

Thank you for your consideration of the foregoing. Please let me know if you have any questions or require additional information.

Sincerely,

Susan Simon

**Exhibit G**



February 10, 2010

Susan Simon
P.O. Box 113
South Lake Tahoe, CA  96156

RE:     Variance Request Application for 8679 Trout Avenue, Kings Beach California
          APN 090-124-024

Dear Ms. Simon:

The North Tahoe Public Utility District (District) Engineering Department has reviewed your Variance Request Application.  The Engineering Department is not recommending approval of your request for variance from District standards.  Your application for variance will be reviewed at the Development and Planning Sub-Committee meeting of the District Board of Directors scheduled for 8:00am on Monday, February 22, 2010, at the North Tahoe Event Center.  You are requested to attend this meeting to make a presentation to the Committee on your application for variance.

The Development and Planning Committee members will then make their recommendation to the Board at the March 9, 2010 Board of Directors Meeting.

Should you have any questions or require additional information, please contact me at (530) 546-4212.

Sincerely,

David T. Berry
Engineering Technician

cc:     General Manager/CEO
        Administrative Assistant
        John Anderson

R:\Engineering\APN file\090-124-024 - Dannys trailer park\Variance Request Response 100210.doc

**Exhibit H**

| From: | David Berry |
|---|---|
| To: | Susan Simon |
| Cc: | John Anderson; David Berry |
| Subject: | NTPUD D&P Meeting |
| Date: | Thursday, February 18, 2010 4:55:33 PM |

Susan,

The Development and Planning Sub-Committee meeting of the District Board of Directors has been rescheduled for 12:00pm – 2:00pm on Monday, February 22, 2010, at the North Tahoe Event Center.

I have cc'd John Anderson using the email address I have.  Please make sure that he receives this information.

Please respond to confirm that you have received this notice.

Thanks,
David

DAVID T. BERRY
ENGINEERING TECHNICIAN

NORTH TAHOE PUBLIC UTILITY DISTRICT
875 NATIONAL AVENUE / PO BOX 139
TAHOE VISTA, CALIFORNIA 96148
TELEPHONE: (530) 546-4212
FAX: (530) 546-2652



**north tahoe**
PUBLIC UTILITY DISTRICT

**Exhibit I**



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

Dave Berry
North Tahoe Public Utility District
PO Box 139
Tahoe Vista, CA 96148

March 3, 2010

Dear Mr. Berry,

8679 Trout Avenue LLC (Owner) submits this letter as a formal request for a continuance from NTPUD Board consideration on March 8, 2010 to their variance application submitted in January, 2010.

The application requested a variance to the following two requirements of the North Tahoe Public Utility District (NTPUD) sewer and water ordinances.

    a.  Extension of the 6" water main in Trout Avenue from its current termination point near Fox Street to the western boundary of parcel 190-124-024

    b.  The requirement to provide a separate and independent sewer lateral for each parcel resulting from this project.

Despite a request by the Owner to withdraw the application, the NTPUD's Development and Planning Committee heard the item at their January 22, 2010 meeting recommended denial and made a motion to move forward to Board level.  We have been advised that the variance is scheduled to be heard at the above mentioned Board meeting and we request to continue the item to a later date.  The Owner would like more time to explore their options.

Thank you for your consideration of the foregoing.  Please let me know if you have any questions or require additional information.

Sincerely,

Susan Simon

**Exhibit J**



**north tahoe**
PUBLIC UTILITY DISTRICT

March 9, 2010

Susan Simon
P.O. Box 113
South Lake Tahoe, CA  96156

RE:   Variance Request Application for 8679 Trout Avenue, Kings Beach California
APN 090-124-024

Dear Ms. Simon:

The North Tahoe Public Utility District (District) Board of Directors voted to deny the request for variance from the District requirements for a separate and independent sewer lateral for each parcel and the extension of the 6" water main in Trout Avenue.

Should you have any questions or require additional information, please contact me at (530) 546-4212.

Sincerely,

David T. Berry
David T. Berry
Engineering Technician

cc:   General Manager/CEO
      Administrative Assistant
      John Anderson
      Dave Ruben, North Tahoe Fire Protection District
      Maywan Krach, Placer County Community Development Resource Agency

Enclosure (1): Variance Request Application submitted by Susan Simon

R:\Engineering\APN file\090-124-024 - Dennys trailer park\Variance Request Denial 100309.doc

875 National Ave  •  P.O. Box 139  •  Tahoe Vista, CA 96148  •  p: 530.546.4212  •  f: 530.546.2652  •  www.ntpud.org

**Exhibit K**

STATE OF CALIFORNIA, BUSINESS, TRANSPORTATION AND HOUSING AGENCY          Arnold Schwarzenegger, Governor
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**DIVISION OF CODES AND STANDARDS**
1800 THIRD STREET, SUITE 260, P.O. BOX 1407
SACRAMENTO, CALIFORNIA 95812-1407
(916) 445-9471   FAX (916) 327-4712
From TDD Phones 1 (800) 735-2929
www.hcd.ca.gov



**April 21 2008**

**Information Bulletin 2008 – 10 (MP)**

TO:          **Local Government Planning Agencies**
             **Local Building Officials**
             **Mobilehome Park Operators and Residents**
             **Mobilehome Park Interested Parties**
             **Division Staff**

SUBJECT:     **VALIDITY OF LOCAL ORDINANCES RELATING TO INSTALLATION OF NEW**
             **MANUFACTURED HOMES AND/OR SALE OR CONVERSION OF**
             **MOBILEHOME PARKS**

A number of local governments are enacting or enforcing ordinances relative to the physical operation and condition of mobilehome parks and recreational vehicle parks that are in conflict with the preemptive nature of the Mobilehome Parks Act ("MPA"), found in Health & Safety Code ]"H&SC"] sections 18200, et seq., and the Special Occupancy Parks Act ("SOPA"), found in H&SC sections 18665, et seq.. Throughout this memorandum, there are references to "manufactured homes", "mobilehome parks" and "the Mobilehome Parks Act"; however, unless otherwise noted, the same issues and rules apply to recreational vehicles or park model trailers, recreational vehicle parks, and the Special Occupancy Parks Act.

This memorandum's purpose is to provide information and clarification for local government officials and those involved with mobilehome parks and manufactured home installations or sales that state law restricts local government authority attempting to regulate the physical structure and operation of mobilehome parks—whether privately-owned, resident-owned, or in the process of conversion. For example, local ordinances which impose inspection, lot standards, or infrastructure requirements within a mobilehome park at the time of home installation, conversion, or sale generally are expressly and/or impliedly preempted by the MPA, and the only valid authority for imposing and enforcing these requirements is the California Department of Housing and Community Development ("HCD") or local enforcement agencies that have assumed jurisdiction to enforce the MPA.

## Statutory Provisions Governing Preemption

California courts have established guidelines for when local ordinances are preempted by state law. The general rule is that, if an otherwise valid local ordinances conflicts with preemptive state law, it is invalid. A "conflict" exists if an ordinance "duplicates, contradicts, or enters an area fully occupied by state law, either expressly or by implication". In addition, preemption is implied if the area is so fully covered by state law as to indicate it is exclusively a matter of state concern; it is partially covered by state law but the state coverage indicates that a paramount state concern will not allow additional

Information Bulletin 2008-10
Page 2

local action; or there is partial state coverage but the adverse effect of a local ordinance on state residents outweighs the possible benefit to the locality.

The MPA contains an express preemption, with minimal express authority for local ordinances. In addition, the Legislature's findings support its intent to allow only very restrictive authority for local government action within the boundaries of a mobilehome park. In the MPA, subdivision (a) of H&SC section 18300 provides that "the MPA and HCD regulations apply to all parts of the state and supersede any ordinance enacted by any city, county, or city and county, whether general law or chartered, affecting parks." Subdivision (g) and (h) of section 18300 provide the limited specific exceptions to the general state preemption, stating that the MPA does not preclude local governments, within the reasonable exercise of their police powers, from doing any of the following:

   * Enacting certain zones for mobilehome parks within the jurisdiction, or establishing types of uses and locations such as senior mobilehome parks, mobilehome condominiums, or mobilehome subdivisions within the jurisdiction. [subdivision (g)(1)]

   * Adopting ordinances, rules, regulations or resolutions prescribing park perimeter walls or enclosures on public street frontage, signs, access, and vehicle parking; or prescribing the prohibition of certain uses for mobilehome parks. [subdivision (g)(1), emphasis added]

   * Regulating the construction and use of equipment and facilities located outside of a manufactured home or mobilehome used to supply gas, water, or electricity thereto or to dispose of sewage *when the facilities are located outside a park*. [subdivision (g)(2), emphasis added].

   * Requiring a permit to use a manufactured home or mobilehome *outside a park* which permit may be refused or revoked if the use violates the MPA or the Manufactured Housing Act. [subdivision (g)(3), emphasis added.]

   * Requiring a local building permit to construct an accessory structure for a manufactured home or mobilehome when the manufactured home or mobilehome is *located outside a mobilehome park*,. [subdivision (g)(4), emphasis added]

   * Prescribing and enforcing setback and separation requirements governing manufactured home, mobilehome, or mobilehome accessory structure or building *installation outside of a mobilehome park*. [subdivision (g)(5), emphasis added]

Other provisions directly addressing preemptive authority include H&SC sections 18253, 18400.1, 18605, 18610, and 25 CA Code of Regulations (CCR), section 1000.

## Permissible Local Government Regulation and Standards

Local governments do have some authority to regulate certain physical components in a mobilehome park. Also, pursuant to subdivision (b) of H&SC section 18300, they may assume MPA enforcement authority and become a "local enforcement agency" ("LEA"), rather than relying on HCD inspectors.

As stated above, subdivision (g) of H&SC section 18300 provides express authority for local governments, within the reasonable exercise of police powers, to adopt zoning ordinances to

Information Bulletin 2008-10
Page 3

allow or prohibit parks and certain park uses, and for park perimeter walls or enclosures on public street frontage, signs, access, and vehicle parking. Also, subdivision (h) of that section allows local governments, within specified parameters, to establish new park density, to require recreational facilities, and to require setback and separation requirements for manufactured housing <u>outside of parks</u>, but no greater than those permitted by applicable ordinances for other affordable housing forms.

H&SC section 18691, subdivision (b), permits a local government that is the MPA enforcement agency to enforce within parks its own fire code that imposes standards equal to or greater than the restrictions in the California Building Standards Code ("CBSC") and other state requirements. In addition, a local government which is not a local enforcement agency may assume fire prevention authority and impose certain portions of its fire code within a park.

Subdivision (e) of H&SC section 18501 and Title 25 CCR, section 1032, permit a local government to approve or deny approval for any construction permit to build or increase the size of a park or to add multifamily manufactured housing based on "compliance with all valid local planning health, utility and fire requirements". (H&SC §18501, emphasis added). The use of the word "valid" implicitly excludes requirements preempted by the MPA, allowing, for example, flood plain ordinance compliance, the minimum size of a park's land parcel, whether a septic system sewer hook-up is required, where and whether off-site drainage is permitted, and/or the number and spacing of fire hydrants.

## Local Ordinance Provisions Which Are Preempted

### General Background

In implementing the Legislature's comprehensive statewide program to establish and enforce park standards for construction, maintenance, repairs, and occupancy, the Department's statutory and regulatory standards impose standards for virtually every aspect of a park's or a manufactured home's physical conditions, except for those expressly left to local government action in subdivision (h) of H&SC section 18300.

With respect to construction of a new or expanded park, or installation of multifamily manufactured housing, HCD regulations require evidence of local approvals from the local planning agency; the health, fire, and public works departments; the agency responsible for flood control; the serving utilities; and any other state or federal agency or special district that has jurisdiction and would be impacted by the proposed construction. (25 CCR §§1020.6, 1032). Similarly, HCD or the LEA may require local approvals for construction of a permanent building under the ownership or control of the park within a park if that installation may impact local services. Most other types of construction, replacements, installations, and alterations require an MPA enforcement agency permit and inspections (25 CCR § 1018), but no local approvals.

HCD regulations govern both park construction and manufactured home installation standards and procedures. Generally, the regulations require that a home and other structures on a park lot use not more than 75% of the lot space (25 CCR §1110) and that the home and structures have specified set-backs and separations from lot lines and structures

Information Bulletin 2008-10
Page 4

(25 CCR §1330). In addition, a "manufactured home" is a specific preemptive definition in H&SC section 18007 and a recreational vehicle (including a park model) is a specifically defined term in H&SC section 18010. As a result, a local government cannot impose restrictions on the minimum or maximum size of a manufactured home to be installed on a mobilehome park lot (ordinance precluding two-story manufactured homes found invalid in *County of Santa Cruz v. Waterhouse* (2005) 127 Cal.App.4[th], 1483, 26 Cal.Rptr 3d 543) or whether a park model or recreational vehicle can be installed on a recreational vehicle lot.

Examples of Preempted Ordinance Provisions

The following italicized sentences are examples of local ordinances that have been brought to HCD's attention and that area preempted by state laws and regulations.

*"If there has been no Title 25 inspection within 3 years, one must be obtained".* H&SC sections 18605 and 18610 provide that HCD's rules govern park maintenance and operation. No express or implied exception exists in H&SC section 18300 permitting local governments to impose inspection requirements related to park maintenance.

*"The Park owner shall provide a list of all Title 25 deficiencies found on inspection and evidence that all deficiencies have been corrected."* Pursuant to H&SC sections 18605 and 18610, HCD's rules govern park maintenance and operation. Pursuant to the preemptive restrictions in H&SC section 18300, no express or implied exception exists permitting local governments to impose enforcement requirements related to park maintenance. In addition, the MPA does not require correction of all deficiencies:
      * The MPA expressly permits extended periods for repairs to achieve correction of deficiencies. H&SC section 18420, subdivision (c)(4), permits the enforcement agency to defer repair requirements as long as there is a "valid reason why a violation has not been corrected, including, but not limited to, weather conditions, illness, availability of repair persons, or availability of financial resources...."
      * The MPA permits an inspector to not cite a violation of the MPA if it is not an imminent hazard. (subdivision (d) of H&SC section 18420)

*"Written documentation from HCD shall be obtained demonstrating that the park complies with all applicable Title 25 requirements."* The MPA governs performance of inspections and issuance of reports of violations or corrections and does not require HCD or an LEA to perform inspections to ensure compliance with "all applicable" Title 25 requirements. A "complaint inspection" involves resolution of a specific complaint. A "park maintenance inspection" involves identification and resolution of only hazards which are either an immediate risk to life, health, and safety, requiring immediate correction; or those constituting unreasonable risks to life, health or safety, requiring correction with 60 days (H&SC §18400.3). No other violations of Title 25 are recorded.

*"Proof of remediation of any Title 25 violations shall be confirmed in writing by the California Department of Housing and Community Development."* In addition to the obvious issue that a local government cannot require HCD to perform any duties related to parks, HCD does not have enforcement responsibility for many of the state's parks and therefore has no information regarding any identified violations or proposed or completed remedies in those parks subject to LEA enforcement.

Information Bulletin 2008-10
Page 5

*"Prior to installation of a new home on an existing lot, there shall be two covered and paved parking spaces on the lot."* Subdivision (f) of Title 25 CCR section 1106 expressly and fully regulates paving for driveways and roadways, stating that paving generally is not required; therefore, local governments may not impose paving requirements. Title 25 CCR sections 1110, 1116, and 1118 regulate lot standards, precluding local government lot standards such as covered parking or a specific number of on-lot spaces. [While H&SC §18300(g)(1) provides local governments with authority to regulate "vehicle parking", that authority is narrowly interpreted and harmonized with the preemptive nature of the MPA by allowing local government ordinances to reasonably require a specified number of parking spaces within the boundaries of the park (to avoid public street parking), but without imposing their own specific location.]

*"No manufactured home may be installed on a lot of less than 4000 square feet, with a minimum depth of 75 feet and a minimum width of 50 feet, at least a fifteen-foot setback from any other home, and at least a ten-foot separation between all structures on the lot other than an attached cabana or covered patio."* The MPA implicitly preempts local authority to establish lot sizes by virtue of the standards in 25 CCR sections 1110 and 1118; see also, 25 CCR section 1106(e); in addition, subdivision (g) of H&SC section 18300 allows local governments to establish "density", not lot sizes or locations. The set-back and separation requirements are expressly established by 25 CCR section 1330; in addition, by implication, local action is precluded with respect to setbacks and separations because, in subdivision (h)(3) of H&SC section 18300, the Legislature authorized local action in this area only for manufactured homes sited <u>outside of</u> mobilehome parks.

*"The sides of the park facing a public street and the sides facing residential construction shall have walls high enough to block sight access of the roofs of the mobilehomes with ivy or other permanent foliage coverage, and no mobilehome shall be closer than 15 feet from the wall or fence."* The locality is authorized, by subdivision (h) of H&SC section 18300, to regulate only the wall or enclosure on the public street frontage, not other sides of the park. The locality is authorized to establish a set-back for the wall or enclosure on the public street frontage, but all other set-back and separation requirements (within the boundaries of the park) are preemptively established by the MPA regulations.

*"Every lot in a mobilehome park shall have no more than one mobilehome and one storage shed, and foliage shall be consistent with the surrounding area."* This ordinance establishes "lot standards". When H&SC section 18300 was amended in 1981, the express authority for local governments to regulate "landscaping" and establish standards for lots, yards, and park area in mobilehome parks was deleted by the Legislature, depriving local authority for this regulation under the MPA.

*"All on-site utilities shall be installed underground."* Utility construction requirements are preempted either by the PUC for utility-owned utilities, and/or by Title 25, CCR, which permits overhead utilities. New parks built after 1997 must have gas and electric services owned, operated, and maintained by the serving utility. See, Public Utilities Code section. 2791, Title 25 CCR, section 1180(g).

Information Bulletin 2008-10
Page 6

*"Prior to final approval of a park conversion, all lots shall be surveyed to be equal in size, clearly demarcated by landscaping, and lot lines approved by the Planning Department shall be recorded with the County Recorder."* A mobilehome park remains a mobilehome park before, during, and after conversion; see, H&SC section 18214, subdivision (a), which provides, ""Mobilehome park" is any area or tract of land where two or more lots are rented or leased, held out for rent or lease, <u>or were formerly held out for rent or lease and later converted to a subdivision, cooperative, condominium, or other form of resident ownership</u>..." (emphasis added) Thus, the preemptive provisions which applied to a park prior to, during, and after conversion. The establishment, marking, and movement of lot lines are governed by Title 25, CCR, sections 1104, 1105, 1330, and 1428. Landscaping is not a proper form of lot marking, and lot lines must either be those in existence or moved and approved pursuant to CCR section 1105. A local government <u>may</u> require that the final approved lot lines be those consistent with the requirements of Title 25, since the local government has the authority to approve final lot lines as part of a subdivision approval; however, their location and marking must be consistent with Title 25.

### Conclusion

The State Legislature, in its enactment and subsequent amendments to the Mobilehome Parks Act and the Special Occupancy Parks Act, has established clear preemptive authority with regard to state regulation of the physical construction and operational standards for mobilehome parks and recreational vehicle parks. Conversely, both expressly and impliedly, the Legislature has narrowly limited local government authority to legislatively mandate any activity or requirements with regard to the physical standards, physical operation, or physical status of a park. A number of local ordinances addressing park standards for construction, maintenance, operations, or conversions to subdivisions or other forms of resident ownership likely are invalid because the two state Acts preempt them.

If you have any questions regarding this memorandum, please feel free to contact our office at the address above.

Sincerely,

Kim Strange
Deputy Director

**Exhibit L**

STATE OF CALIFORNIA -BUSINESS, TRANSPORTATION, AND HOUSING AGENCY                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**DIVISION OF LEGAL AFFAIRS**
1800 Third Street, Suite 440
P.O. Box 952052
Sacramento, CA 94252-2052
(916) 323-7288
FAX (916) 323-2815



## Via U.S. Mail and Facsimile

April 20, 2010

Mr. Neil A. Eskind
Attorney at Law
1345 North Lake Boulevard
Tahoe City, California 96145
Facsimile No. 530-583-8880

Re:    Validity of Subdivision Individual Water Meter Requirements
        North Tahoe Public Utility District/Denny's Trailer Park

Dear Mr. Eskind:

I am following up on our telephone conversation from April 6, 2010, and your subsequent correspondence dated April 8, 2010, directed to the Department of Housing and Community Development Legal Affairs Division (the Department). In these communications, you have asked for the Department's opinion as to whether the Mobilehome Parks Act (MPA)[1] preempts the North Tahoe Public Utility District (NTPUD) from requiring the installation of individual water and sewer meters in the Kings Beach Mobilehome Park/Denny's Trailer Park (the Park) during or following a subdivision of the Park into individually owned lots and manufactured homes.

I have met with my clients to discuss this matter in an effort to provide you with the Department's official interpretation of the MPA as it relates to your client's present concern. The question that was asked, and that the Department is attempting to respond to, is "whether the NTPUD's ordinance that requires all individually owned homes to have their own separate water and sewer meter, is preempted by the MPA when the homes are inside a subdivided Park and the mobilehome lots and homes are now individually owned?"

The Department understands that your client, NTPUD, has received correspondence from the attorney, Ms. Sue Loftin, for the developer of the Denny's Trailer Park, Mr. John Anderson, who asserts that the NTPUD is preempted from enforcing its ordinance

---

[1] Health and Saf. Code, §§ 18200 et seq.

Page 2
April 20, 2010
Denny's Trailer Park

and cites Government Code section 66427.5, the MPA and the recent Court of Appeal opinion, *Sequoia Park Associates*.[2]   The Department has no position on the application of Government Code section 66427.5 to the facts presented as the Department is not the enforcement body of this Code.

Prior to providing you with my client's opinion, in the interest of full disclosure, I must first state that the Department does not have any interest in the prospective lawsuit between the developer, Mr. John Anderson, represented by Attorney Ms. Sue Loftin, and the NTPUD or Placer County.  As discussed in this letter, the Department's land use preemptive authority, as it relates to conditions on subdividing land, only relates to cities, counties, and cities and counties, not utility districts.  In addition, as noted above, the Department has no enforcement authority, and therefore no opinion, as to the operation of Government Code section 66425.  Thus, the Department would not be a proper party in a lawsuit related to the issues you've raised.

Further, the Department's opinion in this correspondence is based solely on the documents provided by you to the Department which include: 1) Letter dated April 8, 2010 from Neil Eskind, Attorney for NTPUD; 2) Letter dated March 18, 2010, from Attorney Sue Loftin representing developer John Anderson; 3) NTPUD Memo dated February 1, 2010, titled "Summary of Correspondence with owner of Denny's Trailer Park;" 4) Fee Acknowledgement Form signed by John Anderson; 5) Letter from North Tahoe Public Utility District to Maywan Krach of Placer County Planning Division dated March 27, 2009; 6) Memo dated March 10, 2009 to Distribution List of County of Placer from Maywan Krach; 7) Simon Environmental Planning letter dated February 25, 2009.  None of these documents include facts or requirements related to the Department's enforcement authority.  I would also ask that my electronic mail that I sent to you initially on April 6, 2010, be disregarded as it was based on a different understanding of the facts at issue and therefore does not reflect the opinion of the Department.

Subject to the disclaimers above, and notwithstanding my previous email, the Department provides you with the following opinion:  The Department opines that the MPA does NOT preempt the NTPUD from enforcing a validly enacted ordinance that requires all individual homeowners who own their own land, including individual manufactured home owners, from installing individual sewer/water meters on their home when a subdivision occurs.  The Department understands that Denny's Trailer Park has submitted a subdivision application to the County of Placer in an effort to develop and subdivide the park and then sell the lots as individual lots with manufactured homes.

---

[2] *Sequoia Park Associates v. County of Sonoma* (2009) 176 Cal. App. 4th 1270

Page 3
April 20, 2010
Denny's Trailer Park

The Department further understands that the NTPUD is requiring, as a consequence of this subdivision of the Park lots, that all of the manufactured homes that will be placed on the new individual subdivided lots be required to have individual water/sewer meters installed in order to be serviced by NTPUD. The NTPUD has the lawful authority to maintain and operate the water and sewer systems for North Lake Tahoe outside of the Park. Thus, the NTPUD can require as a condition of service that in order for an individual homeowner to receive water/sewer service the homes must install an individual meter.

As we understand the information you provided, the NTPUD does not have authority to condition subdivision of the lots on individual meter installations; conditions of the subdivision are within the sole authority of the county. NTPUD merely states that if property is subdivided, it must be individually metered. Thus, it is up to the park owner to decide either to subdivide lots and place homes on those lots that will not be able to receive water/sewer service due to refusing to install individual meters on the individual lots, or to subdivide, install the individual meters, and receive utility service. Additionally, it is a decision between NTPUD and the Park owner whether the installation of the individual meters will be outside the perimeter of the Park or on each individual lot.

Further, the Department has no position on the mechanics of the installation of the actual meters, except to say that the NTPUD is preempted by the MPA from requiring the Park owner, in installing the meters inside the Park, to use any particular construction, pipes or piping. All construction and construction materials must be in accordance with the MPA and the California Plumbing Code as referenced at California Code of Regulations, title 25, sections 1240, et seq.

In summary, the basis of this opinion is the information you have pointed out in both the telephone conversation and in your correspondence: the installation of the meters on the individual lots is not an NTPUD condition of the subdivision or the county's approval of the subdivision, but a consequence of the subdivision.

The Department has not reviewed or evaluated any applications, plans, rules or any other related item related to the subdivision of the Denny's Trailer Park, or any recent construction related thereto, and has no further comment other than what is stated above. The Department reserves the right and authority to comment on and/or object to any construction plans related to the individual metering at the time an application for construction is presented to the Department as the enforcement agency and during construction.

Page 4
April 20, 2010
Denny's Trailer Park

Thank you for your bringing this matter to our attention and providing us with the opportunity to weigh in on the issues related to our enforcement authority.  Please feel free to contact me if you require any further assistance.

Very truly yours,

Lisa R. Campbell
Sr. Staff Counsel
Legal Affairs Division
Department of Housing and Community Development

cc: Kim Strange, Dep. Dir. Code and Standards Div.
    Clayton Haas, Asst. Dep. Dir. Codes and Standards Div.
    Ron Javor, Codes and Standards Div.
    Chris Anderson, CSA III, Codes and Standards Div.
    Brad Harward, CSA II, Codes and Standards Div.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

North Tahoe Public Utilities District, North Tahoe Public Utilities
District Board of Directors, and Does 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

8679 Trout, LLC

| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
| --- |
| **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF PLACER<br><br>JUN 07 2010<br><br>By K. Schwamb, Deputy |

**FILE BY FAX**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*  TCV 1007 |
| --- | --- |

Superior Court of California, County of Placer, Tahoe Division,
2501 North Lake Boulevard, Tahoe City, CA 96145

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alex Maniscalco, THE LOFTIN FIRM, 5760 Fleet Street, Suite 110, Carlsbad, CA 92008 (760) 431-2111

| DATE: June 7, 2010<br>*(Fecha)* | Clerk, by<br>*(Secretario)*  K. Schwamb | , Deputy<br>*(Adjunto)* |
| --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
| --- | --- | --- |

EXHIBIT **B**



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Alexander S. Maniscalco, Esq. (SBN 259657) THE LOFTIN FIRM, LLP 5760 Fleet Street, Suite 110 Carlsbad, California 92008 | **FILED** SUPERIOR COURT OF CALIFORNIA COUNTY OF PLACER |

TELEPHONE NO.: 760-431-2111   FAX NO.: 760-431-2003
ATTORNEY FOR *(Name):* 8679 Trout, LLC (Petitioner)

JUN 0 7 2010

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Placer
STREET ADDRESS: 2501 North Lake Boulevard
MAILING ADDRESS: 2501 North Lake Boulevard
CITY AND ZIP CODE: Tahoe City, CA 96145
BRANCH NAME: Tahoe Division

By K. Schwamb, Deputy

CASE NAME:
8679 Trout, LLC v. North Tahoe Public Utility District, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant *(Cal. Rules of Court, rule 3.402)* | | *TCV 1607* JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☑ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☑ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties     d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☑ monetary   b.☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive

4. Number of causes of action *(specify):*  1

5. This case ☐ is  ☑ is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 6-7-10     Alexander Maniscalco     ▶ _(signature)_

(TYPE OR PRINT NAME)     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |

American LegalNet, Inc.
www.FormsWorkflow.com

FILE BY FAX

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

L. Sue Loftin, Esq. (SBN 092016)
Michael D. Stump, Esq. (SBN 042580)
Elisa M. Perez, Esq.   (SBN 255232)
Alexander S. Maniscalco, Esq. (SBN 259657)
THE LOFTIN FIRM, LLP
5760 Fleet Street, Suite 110
Carlsbad, California 92008
Tel: (760) 431-2111
Fax: (760) 431-2003

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF PLACER

JUN 0 7 2010

By K. Schwamb, Deputy

Attorneys for Petitioner 8679 Trout, LLC

**FILE BY FAX**

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF PLACER

| | |
|---|---|
| 8679 TROUT, LLC, a California Limited Liability Company,<br><br>                Petitioner,<br><br>vs.<br><br>NORTH TAHOE PUBLIC UTILITIES DISTRICT, a Municipal Corporation, NORTH TAHOE PUBLIC UTILITIES DISTRICT BOARD OF DIRECTORS, and DOES 1 through 10, inclusive,<br><br>                Respondents. | Case No.: *TCV1607*<br><br>PETITION FOR WRIT OF MANDAMUS [C.C.P. § 1094.5]<br>Date: 7-9-10<br>Time: 9:30<br>Dept.: 14<br>Judge: *Bahrle*<br><br>Petition Filed: |

Petitioner 8679 Trout, LLC, by this verified petition allege as follow:

### THE PARTIES

1.      Petitioner 8679 Trout, LLC ("8679") is a California Limited Liability Corporation doing business as Denny's Mobilehome Park (the "Park") in Placer County, State of California.

2.      Petitioner is informed and believes, and thereon alleges, that Respondent North Tahoe Public Utility District ("NTPUD") is a municipal corporation organized and existing under the laws of the State of California.

3.      Respondent North Tahoe Public Utility District Board of Directors ("Board") are the Board of Directors of the NTPUD and are sued only in their official capacity.

4.      The true names and capacities, whether individual, corporate, or associate, governmental or otherwise, of respondents Does 1-10, inclusive, are unknown to Petitioner at this time and Petitioner therefore sues said respondents by such fictitious names. Leave of Court will be requested to amend this Petition to show their true names and capacities when the same have been ascertained. NTPUD and Does 1-10, inclusive, are sometimes hereinafter collectively referred to as "Respondents." Petitioner is further informed and believes, and thereon alleges, that Respondents, and each of them, in doing the things hereinafter alleged were acting pursuant to the course and scope of their authority as agents, servants, and employees of one another and with the permission and consent of their co-respondents.

Petitioner is informed and believes, and thereon alleges, that Respondents, and each of them, conspired and acted in concert with each other with respect to the events and happenings referred to herein, which proximately caused the damages hereinafter alleged.

### VENUE AND JURISDICTION

6.      This court has personal jurisdiction over Respondents as they are, and at all relevant times hereinafter mentioned were, public agencies, districts, municipal corporations, and administrative bodies, and/or residents of the State of California.

7.      Venue is properly placed in the County of Placer, State of California for the following reasons, among others: (s) the wrongful conduct, acts, and omissions of Respondents occurred and took place in the County of Placer, State of California; (b) the effects of such wrongful conduct and the injury resulting therefrom to Petitioner occurred in the County of Placer, State of California; (c) and the Respondents, their employees and representatives and most of the witnesses to the conduct alleged herein reside in or around the County of Placer or have their principal places of business and conduct their businesses within the County of Placer, State of California.

### GENERAL FACTUAL ALLEGATIONS

I.      Introduction

8.      Petitioner owns land and improvements in the NTPUD commonly known as Denny's Mobilehome Park. From late 2006, Petitioner has operated the Park in its present construction, with seven mobilehomes and seven legal lots. The park has existed as seven-unit

2

1   mobilehome park for approximately thirty years.

2       9.      Petitioner intends to sell those units within the park to resident ownership, with

3   common ownership of the common facilities, as opposed to a rental only facility owned by

4   Petitioner. When a mobilehome park is converted, each existing lot in the park becomes

5   separately transferable pursuant to State law and subject to applicable covenants, conditions, and

6   restrictions.

7       10.     California has adopted a comprehensive statutory scheme governing the paper

8   conversion of mobilehome parks from rental facilities to resident-owned or condominium-style

9   parks. The agency principally responsible for administering that statutory scheme is the

10  California Department of Real Estate. Under state law, particularly the statutory scheme of Cal.

11  Gov. Code sections 66427.5 and 66428.1, and the prohibition on fees of section 66451.6, local

12  agencies like NTPUD are precluded from placing extraneous conditions on paper conversions to

13  resident ownership. The scheme provides specific and detailed requirements for application

14  approval and limits the local government's review of the application to the question of whether

15  the requirements of Cal. Gov. Code section 66427.5 have been satisfied, and exists because no

16  construction or physical development at the Park is contemplated or necessary.

17      11. After the lot line adjustments of subdivision, and certification of conversion to

18  resident ownership are approved by the local government, the California Department of Real

19  Estate regulates the marketing and sale of the individual units in the Park. The California

20  Department of Housing and Community Development continues supervising the park's design

21  and operation pursuant to the Mobilehome Parks Act, Cal. Health and Safety Code § 18200 *et*

22  *seq.*, and Title 25 of the California Code of Regulations.

23      12. From the first meetings in early 2006, representatives for Petitioner discussed the

24  proposed design, reconstruction, and conversion of the Park from a rental-only facility to

25  resident ownership (the "Conversion") with NTPUD. Petitioner provided plans showing

26  anticipated lot line adjustments, meter locations, and sewer and water connections; a fair

27  reproduction of those plans, based on Petitioner's information and belief, is attached as Exhibit

28  C. As part of that application, NTPUD was given drawings physically showing the locations. See

    Exhibits A and B. Respondent first demanded a new water main, in correspondence dated May 1,

1    2006, and then retracted, acknowledging that this was a continuation of service—acknowledging

2    the only conditions of service were that owner install a separate service line on May 15, 2006.

3    After District's design approval, HCD required certain changes to the plan.

4    13. In the Spring of 2009, Petitioner contacted NTPUD to obtain confirmation of service

5    for its petition to Placer County for conversion under Cal. Gov. Code § 66427.5. *NTPUD did not*

6    *require an application for service.* In response, representatives from NTPUD explained that

7    such use was commonly applied in condominium conversions and other such changes of

8    ownership, without physical changes to the property. NTPUD set forth requirements for viability

9    of the future owners via proposing CC&R language, and preparing a variance application at

10   NTPUD's recommendation. Petitioner proceeded about drafting the CC&Rs. NTPUD also

11   wanted documentation of water usage capacity, which Petitioner provided.

12   14. However, on October 22, 2009, NTPUD staff changed course—requiring new sewer

13   and water service to each parcel, within the park, exacting utility easements within the park,

14   exacting a water main extension offsite, and demanding relocation of individual water meters

15   outside the park. See Exhibit D. On December 15, 2009, NTPUD staff advised Petitioner to

16   make a variance request, as part of the routine processing of the will serve letter. See Exhibit E.

17   Petitioner complied, and submitted a detailed variance. See Exhibit F.

18   14. Shortly thereafter, and without further action by Petitioner, NTPUD gave written

19   notice on February 10, 2010 that it calendared an adjudicatory meeting on the variance for

20
21   February 22, 2010. See Exhibit G. District changed its course from early 2006 onward, with staff

22   recommending denial of a variance unless the new wet utilities (water and sewer) within the

23   interior of the park were ripped out and replaced with new lines for each individual unit, with the

24   payment of new fees for each wet utility connection. District also changed the time of the

25
26   February 22, 2010 meeting, less than two business days prior to the meeting, without giving

27   Petitioner written notice of the change--informing Petitioner's agent via email. See Exhibit H.

28   Petitioner called, objecting to the new time and asking for a delay or withdrawal of application

     because Petitioner could not be present, and Petitioner did not have time to arrange legal counsel.

                                                    4

15. District proceeded and held the hearing on February 22, 2010, before the Development and Planning Committee and denied the application—depriving Petitioner of the ability to provide additional argument and detail by changing the time.

16. Petitioner was later surprised to hear of a March 9, 2010 Board hearing, on the continued or withdrawn application. By letter dated March 3, 2010, Petitioner again requested delay and continuance from a hearing, (See Exhibit I) but on March 9, 2010, North Tahoe Public Utility District board heard the variance request anyway, and approximately two weeks thereafter, around March 23, 2010, Petitioner received a letter that the variance was denied, despite Petitioner's request for continuance or withdrawal. See Exhibit J. Such letter did not include any notice or discussion of rights of appeal, or statute of limitations.

17. Petitioner has exhausted the available administrative remedies required to be pursued by it and has no appeal nor any adequate remedy at law in that there is no appeal from a City Council decision.

### COUNT ONE: For Issuance of a Writ of Mandamus

18. Petitioner re-alleges and incorporates by reference each and all of the allegations contained in paragraphs 1 through 17 as if fully set forth herein.

19. The District's decisions, are in excess of its jurisdiction, and it has failed to proceed as required by law in that:

      i. District relies on an ordinance, namely Water Ordinance 3.04, and Sewer Ordinance 3.01.C which require specific construction or design within a property, and are thus expressly preempted as applied to mobilehome parks by the Mobilehome Parks Act, and the Department of Housing and Community Development's mobilehome regulations in Title 25.

      ii. District relies on Resolution, 2005-8, which exacts offsite improvements from property owners (actually limited to those who do not presently have access to water and sewer mains, and to developers of "vacant property")

5

which is invalid as applied to conversions of mobilehome parks by *Sequoia v. County of Sonoma*, 176 Cal. App. 4th 1270 (2009), *El Dorado Palm Springs Ltd. V. City of Palm Springs*, 96 Cal.App. 4th 1153, Cal. Gov Code § 66427.5, and Cal. Gov. Code § 66451.6.

iii. District imposes development-related connection fees, as regulated by Cal. Gov. Code § 66013 and which are in violation of California law when applied to mobilehome park conversions--namely Cal. Gov. Code § 66451.6.

iv. Under California law, a local agency's consideration of entitlements surrounding mobilehome park conversion to resident ownership is governed by Cal. Gov. Code section 66427.5, which provides specific and detailed requirements for approval and limits review of the application to the question of whether the requirements of Cal. Gov. Code section 66427.5, and the other conditions of Cal. Gov. Code section 66428.1 by implication, have been satisfied. *See also Sequoia*, 176 Cal. App. 4th 1270.

v. Petitioner promptly withdrew the application, orally prior to the February 22, 2010 hearing, and via writing prior to the March 9, 2010 hearing. See Exhibit I, depriving the District of the jurisdiction to make the negative determination it purports. Exhibit J.

20. The District's actions, constitute an abuse of discretion and are prejudicial in that:

i. the actions rely on insufficient findings. District relies on Resolution, 2005-8, which exacts offsite improvements from property owners who do not presently have access to water and sewer mains, and to developers of vacant property, neither of which applies to Petitioner based on information provided by Petitioner as set forth in District's own Records

ii. the findings for the actions are not supported by the evidence in the record, for the same reasons as set forth hereinabove.

21. Accordingly, the denial and unlawful action by the District because the District,

6

through its Board of Directors, failed to comply with, and brazenly disregarded, State law

in denying Petitioner's Application.

22. Wherefore, Petitioner prays for judgment as follows:

    1.    For a writ of mandate directing respondent District to vacate its resolutions denying Petitioner's appeals, and issue a new resolution confirming Petitioner's prior right to service in current form, so long as no change in use and/or building permit is required.

    2.    For an award of costs of suit, expenses, and reasonable attorneys' fees; and

    3.    For such other and further relief as the court deems just and proper.

Respectfully Submitted,

Dated: June 6, 2010

THE LOFTIN FIRM

By:    Alexander S. Maniscalco
Attorneys for Petitioner

1
2                          **VERIFICATION**
3
4       I, John Anderson, declare:
5       I am member of 8679 Trout, LLC, a party to this action, and am authorized to make this
6   verification for and on its behalf, and I make this verification for that reason. I have read the
7   Verified Petition for Writ of Mandamus in this action and I know the contents thereof. The
8   matters therein stated are true of my own knowledge except as to those matters which are stated
9   on information and belief, and as to those matters I believe them to be true.
10      I declare under penalty of perjury under the laws of the State of California that the
11  foregoing is true and correct. Executed on June 7, 2010, at San Francisco, California.
12
13
14
15                                 _____
                                   John Anderson, Member
16                                 8679 Trout, LLC
17
18
19
20
21
22
23
24
25
26
27
28

L. Sue Loftin, Esq. (SBN 092016)
Michael D. Stump, Esq. (SBN 042580)
Elisa M. Perez, Esq.   (SBN 255232)
Alexander S. Maniscalco, Esq. (SBN 259657)
THE LOFTIN FIRM, LLP
5760 Fleet Street, Suite 110
Carlsbad, California 92008
Tel: (760) 431-2111
Fax: (760) 431-2003

Attorneys for Petitioner 8679 Trout, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF PLACER

| | |
|---|---|
| 8679 TROUT, LLC, a California Limited Liability Company, | Case No.: |
| | MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS [C.C.P. §§ 1094.5] |
| Petitioner, | Date: |
| vs. | Time: |
| | Dept.: |
| NORTH TAHOE PUBLIC UTILITIES DISTRICT, a Municipal Corporation, NORTH TAHOE PUBLIC UTILITIES DISTRICT BOARD OF DIRECTORS, and DOES 1 through 10, inclusive, | Judge: |
| | Petition Filed: |
| Respondents. | |

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

1

//

## I.   INTRODUCTION

This case involves the North Tahoe Public Utilities District's ("District" or "NTPUD") improper withholding of a confirmation of existing water and sewer service to Petitioner 8679 Trout, LLC ("8679"), and for the subsequent requirement and denials of a variance application submitted as part of the entitlement process, converting Petitioners' mobilehome park from a rental-only facility to resident ownership.

Regardless of the form of land-use entitlement or resident ownership of a mobilehome park, a mobilehome park remains a mobilehome park, within the definition in Cal. Health & Safety Code Sec. 18214. Local agency authority in regulating mobilehome parks is constrained and preempted by the Mobilehome Parks Act, Health & Safety Code sections 18200 *et seq.* ("MPA").  Pursuant to the MPA, the authority to regulate the infrastructure, condition and maintenance of mobilehome park facilities is vested exclusively in the California Department of Housing and Community Development.

However, impositions on mobilehome park resident conversions are further regulated, in broadly worded statutes within the Cal. Gov. Code. Mobilehome park conversions to resident ownership are primarily governed by Section 66427.5 of the Government Code.[1] Pursuant to Section 66427.5, a local agency's authority over a conversion is strictly limited to determining if the application for conversion to resident ownership has complied with the specific requirement of that section. Only minimal conditions may be imposed. *Sequoia v. County of Sonoma,* 176 Cal. App. 4th 1270 (2009) ("*Sequoia*"); *El Dorado Palm Springs Ltd. V. City of Palm Springs,* 96 Cal.App. 4th 1153, 1163-66 (2002) ("*El Dorado*"); Cal. Gov. Code § 66427.5.  Section

---

[1] All references are to the California Government Code unless otherwise indicated.

66427.5 provides that an application for conversion must include a tentative map or tentative parcel map ("Parcel Map") for a subdivision, a resident survey of support ("Survey"), and a tenant impact report. Cal. Gov. Code § 66427.5. In addition, per Cal. Gov. Code Sec. 66451.6, no fees may be charged in connection with a mobilehome park conversion, as the legislative history shows, it is a paperwork conversion—there is no physical change.

The grounds for issuance of the writ are those set forth herein, that a local agency's power is strictly limited to determining if an application for conversion has complied with the specific requirements of Cal. Gov. Code section *66427.5;* they may not exact physical changes within the park by preemption in both the Mobilehome Parks Act, Health & Safety Code §§ 18200 *et seq.*, and the law governing mobilehome park conversion in Cal. Gov. Code § 66427.5, as explained in *Sequoia,* 176 Cal. App. 4th 1270 and *El Dorado,* 96 Cal.App. 4th at 1163, which Petitioners have done, and District's decision to deny the Application and Variance for the ground set forth in the denials were an abuse of discretion, incorrect and unlawful.

## II.   STATEMENT OF FACTS

Please see statement of facts enumerated in the above petition, lines 1-17.

A. Mobilehome Park Conversions

Under California law, a local agency's consideration of the conversion of a mobilehome park to resident ownership is governed by Section 66427.5, one of several related statutes governing the entire conversion process.   Section 66427.5 provides specific and detailed requirements for conversions and limits local government review of the application to the question of whether the requirements of Section 66427.5 have been satisfied. Cal. Gov. Code § 66427.5; *El Dorado*, 96 Cal.App. 4th at 1163-1166. Pursuant to Section 66427.5, an application

3

for conversion requires the submission of (i) a tentative map ("Tentative Map") or tentative parcel map ("Parcel Map") for a subdivision, (ii) a resident survey of support ("Survey"), and (iii) a tenant impact report.[2]

Along with the subsequent approvals from the Department of Real Estate ("DRE"), an application for conversion has the effect of subdividing a mobilehome park into separately transferable real estate units, as well as interests in undivided common areas.  No construction or physical development at the park is contemplated or necessary.  The subdivision is merely a legal division whereby separate sellable interests are created within the park.  Furthermore, pursuant to the Mobilehome Parks Act, the continuing authority to regulate the maintenance of mobilehome park facilities and infrastructure before, during, and after Conversion remains exclusively with the Department of Housing and Community Development.  Health and Safety Code §§ 18200 *et seq.* Letter from Lisa Campbell, Exhibit L.

B. <u>The District.</u>

The North Tahoe Public Utility District is a Public Utility District, purportedly governed by the Public Utility District Act, in Cal. Pub. Util Code § 15501 *et seq.* By counsel, NTPUD has disclaimed the applicability of any provision within the Map Act to its de facto regulation of the subdivision conversion, merely because it is not a "city, county, or city and county." It has further argued that an opinion from Department of Housing and Community Development focused on the availability of individual meters.

III.   **ARGUMENT**

A. **Court's Jurisdiction and Standard of Review**

A local agency's decision to deny or approve a variance request is an adjudicative or

4

quasi-judicial act subject to judicial review under the statutory mandamus provision.  Civ. Proc. Code §§ 1085, 1094.5; *Youngblood v. Bd. Of Supervisors* (1978) 22 Cal.3d 655, 657 n.2.; *Harroman Co. v. Town of Tiburon* (1991) 235 Cal.App.3d 388, 392.  Mandamus will issue when a local government acts in excess of its jurisdiction or abused its discretion by failing to proceed in the manner required by law.  Civ. Proc. Code § 1094.5, subd. (b).  The District has both exceeded its jurisdiction and failed to proceed in the manner required by law.  As discussed below, the action taken by the District is void and subject to reversal by writ of mandamus.  See *El Dorado*, 96 Cal.App4th at 1182 (issuance of writ of mandamus to require removal of extra-statutory conditions applied to application for conversion of mobilehome park); see also *Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 273-74.

A court reviews a local agency's legal conclusions under an independent judgment, or de novo standard of review.  *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1217.  Here, the issues are purely questions of law and arguably the facts are undisputed.  The District has exceeded its jurisdiction and exercised discretion it did not have by exceeding the limitations imposed upon it by State law.  State law preempts local agencies from regulating, enforcing, or overseeing a mobilehome park's infrastructure, maintenance and condition.  Cal. Health & Safety Code §§ 18200 *et seq*.  The denials of the District are contrary to the legislative purpose of creating uniform statewide standards promoting conversions of mobilehomes to resident ownership. State law further prohibits the effective denial of a conversion on bases other than those specifically set forth in Section 66427.5.  *El Dorado,* 96 Cal.App4th at 1169-70, 1182; Cal. Gov. Code §66127.5, subd. (e).

A court also reviews a local agency's findings and evidence under an independent judgment, or de novo standard of review when a fundamental vested right is implicated, such as

"the right to continue operating an established business in which [the owner has] made a substantial investment," *Goat Hill Tavern v City of Costa Mesa* 6 Cal. App. 4th 1519, 1529 (1992). *See also, Malibu Mountains Recreation, Inc. v County of Los Angeles* 67 Cal. App. 4th 359, 367 (1998);* This applies even to nongovernmental entities. *See, e.g. Anton v San Antonio Community Hosp. 19 Cal. 3d 802 (1977)*.

**B. A Writ of Mandamus Must Issue When, As Here, the District's Actions Were In Excess Of Its Authority and Jurisdiction**

1. An Agency Has No Authority To Regulate Mobilehome Park Conversions Or Require a Particular Design Within the State-Regulated Boundaries of a Mobilehome Park.

Mobilehome park conversions to resident ownership are primarily governed by Section 66427.5 of the Government Code.[3]  Pursuant to Section 66427.5, a local agency's authority over a conversion is strictly limited to determining if the application for conversion to resident ownership has complied with the specific requirement of that section. Only minimal conditions may be imposed. *Sequoia v. County of Sonoma,* 176 Cal. App. 4th 1270 (2009) ("*Sequoia*"); *El Dorado Palm Springs Ltd. V. City of Palm Springs*, 96 Cal.App. 4th 1153, 1163-66 (2002) ("*El Dorado*"); Cal. Gov. Code § 66427.5. "It is a general rule of statutory interpretation that, in the event of statutory conflict, a specific provision will control over a general provision." *Arbuckle-College City Fire Protection Dist. V. County of Colusa* (2003) 105 Cal.App.4th 1155, 1166 (citations omitted.) "It can be presumed that when the Legislature has enacted a specific statute to deal with a particular matter, it would intend the specific statute to control over more general provisions of law that might otherwise apply." *Id.* (citations omitted.) Here, the Legislature enacted Section 66427.5 to specifically address Conversions from a rental park to resident

---

3 All references are to the California Government Code unless otherwise indicated.

6

ownership. *El Dorado*, 96 Cal.App. 4th at 1174 ("[S]ection 66427.5 applies to all subdivisions to be created from the conversion of a rental mobilehome park to resident ownership. . . "). Agency has sought to impose the conditions outlined in Exhibit D. Any such conditions are in violation of the statutory scheme governing mobilehome park conversions to resident ownership. Thus, Agency should be compelled by writ to verify service exists at present and will be unaffected.

Local agency authority in regulating mobilehome parks also is constrained and preempted by the Mobilehome Parks Act, Health & Safety Code sections 18200 *et seq.* ("MPA"). Pursuant to the MPA, the authority to regulate the infrastructure, condition and maintenance of mobilehome park facilities is vested exclusively in the California Department of Housing and Community Development. See also HCD, Information Bulletin 2008-10, attached as Exhibit K, and Letter from Lisa Campbell, Exhibit L. However, as evidenced by Exhibit D, District seeks to impose conditions on the interior of the park. Regardless of the content of any purportedly valid or invalid, preempted ordinance, these conditions as reasons for denial are preempted by California Dept. of Housing and Community Development's Regulation—as they seek to mandate a specific design within the park, even when acting outside the park.

District's threats to withhold future service are impermissible, particularly when there is no change in use or impact and the Park remains a mobilehome park. As the court made clear in *El Dorado*, in the context of Section 66427.5, "[A] change in form of ownership is not a change in use. After the change of ownership, the mobilehome park will remain a mobilehome park." 96 Cal.App.4th at 1162.

2. <u>An Agency Has No Authority to Require Connection Fees in Violation of the Mitigation Fee Act, Cal. Gov. Code § 66013, and Cal. Gov. Code § 66451.6</u>

Agency has required the payment of connection fees in addition to its regulation. These fees are imposed as a condition to development. Thus, arguably they are development fees and prohibited by the plain language of Cal. Gov. Code § 66451.6. See Exhibit D. Fees are either special assessments, development fees, or regulatory activity imposed on the police power. *Sinclair Paint Co. v. State Bd. of Equalization*, 15 Cal. 4th 866, 874 (1997). Connection fees in Cal. Gov. Code § 66013 are under the Mitigation Fee Act which (§§ 66000-66025 places various limits on the fees and charges that local agencies (including utility districts) can impose on persons or property holders, and is primarily concerned with development fees; "fees imposed on development projects in order to finance public improvements or programs that bear a "reasonable relationship" to the development at issue." Util. Cost Management v. Indian Wells Valley Water Dist., 26 Cal. 4th 1185, 1191 (Cal. 2001).

3. Failure to Provide Sufficient Notice of Changes to Hearing, and Withdrawal of Application Deprives Agency of of Jurisdiction

The District did not provide sufficient notice to Plaintiff when rescheduling the second hearing, and proceeding with an appeal in bank. See, e.g., *Aylward v State Bd. of Chiropractic Exam'rs* (1948) 31 Cal 2d. 833, 839. (agency acted in excess of its jurisdiction when it made license revocation decision without any notice or hearing).

Case law long ago established a general rule that, absent statutory authority to the contrary, withdrawal of an application for a license or permit deprives the agency of further jurisdiction. *McDonald v State Bar* (1943) 22 Cal 2d. 768.

An objection that an administrative agency has proceeded without or in excess of its jurisdiction may be made at any time; failure to object at the administrative hearing does not

8

constitute a waiver. *See, e.g. Vo v Board of Med, Quality Assur.* (1991) 235 Cal. App. 3d 820, 826. Moreover, if an agency's adjudicatory action exceeds its jurisdiction, its decision is also subject to collateral attack. *City & County of San Francisco v Padilla* (1972) 23 Cal. App. 3d 388, 400. Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel, *Buckley v California Coastal Comm'n* (1998) 68 Cal. App. 4th 178, 190.

**C. A Writ of Mandamus Must Issue, When as Here, the Actions Are Unsupported And Constitute an Abuse of Discretion and were Prejudicial to Applicant**

1. Insufficient Findings Within Record.

Based on the clear language of the NTPUD Water Ordinance, the NTPUD Sewer Ordinance, and Resolution 2008-05 (See Exhibit 1), Petitioner alleges that District failed to make the requisite findings within the administrative record from hearings on February 22, 2010 and March 9, 2010, to support denial of application and denial of variance.

2. Insufficient Evidence to Justify Findings

Based on the clear language of the NTPUD Water Ordinance, the NTPUD Sewer Ordinance, and Resolution 2008-05 (See Exhibit 1), Petitioner alleges that District failed to collect the requisite evidence with which to justify its findings within the administrative record from hearings on February 22, 2010 and March 9, 2010, to support denial of application and denial of variance. This is based, in part, on the fact that Petitioner orally withdrew his application from consideration when District notified Petitioner's representative via email, less than two business days before the February 22, 2010 hearing, that District would be unable to hold the hearing on the morning of February 22, 2010, and was instead rescheduling it to the afternoon of February 22, 2010. This is also based, in part, on the fact that Petitioner again requested that their application be continued or withdrawn orally and via writing on March 3, 2010, upon finding

that Petitioner's withdrawn application was being heard for appeal by the District Board of Directors, on March 9, 2010, and Petitioner would not be able to attend.

## IV.   CONCLUSION

As set forth above, the actions of the District in failing to confirm service in the mobilehome park before and after any entitlement within the park, whether by requiring and denying an application, or otherwise, is contrary to state law.  The decision of the District is an abuse of discretion and in excess of its jurisdiction.  It is respectfully requested that a writ of mandate issue to compel the District to set aside its decision and both confirm service and approve the application it has required. In the event the court deems that traditional mandamus were proper and not administrative mandamus, Petitioner respectfully requests the court grant a writ of traditional mandate, Cal. Code of Civ. Proc. § 1085. *See, e.g. Mahdavi v Fair Employment Practices Comm'n.*, 67 Cal. App. 3d 326, 336 (1977).

Dated: June 4, 2010

THE LOFTIN FIRM

By: Alexander S. Maniscalco
Attorneys for Petitioner

## List of Exhibits

| | |
|---|---|
| **Exhibit A** | **May 1, 2006 Letter, NTPUD** |
| **Exhibit B** | **May 15, 2006 Letter, NTPUD** |
| **Exhibit C** | **Plans for Park as of May 16, 2006** |
| **Exhibit D** | **October 22, 2009 Letter, NTPUD** |
| **Exhibit E** | **December 15, 2009 Letter, NTPUD** |
| **Exhibit F** | **Petitioner's Variance Request** |
| **Exhibit G** | **February 10, 2010 Letter, NTPUD** |
| **Exhibit H** | **February 18, 2010 Email, NTPUD** |
| **Exhibit I** | **March 3, 2010 Letter, Petitioner** |
| **Exhibit J** | **March 9, 2010 Letter** |
| **Exhibit K** | **HCD Information Bulletin 2008-10** |
| **Exhibit L** | **Letter from Lisa Campbell, 2009** |

1

**Exhibit A**



# NORTH TAHOE
# PUBLIC UTILITY DISTRICT

May 1, 2006

Attn: John Anderson
8679 Trout LLC
P.O. Box 3705
Olympic Valley, CA  96146-3705

Re:   8679 Trout Avenue – APN 090-124-024 – Water and Sewer Services for
      Reconstructed Mobile Home Park

Dear Mr. Anderson,

Thank you for contacting the District regarding the proposed project at the property
referenced above. Per the email you sent on April 4, 2006 and our telephone
conversations, "the project is an upgrade of an existing 7 unit trailer park to meet TRPA
grading requirements… (and) in the revised layout, there will be 7 trailers only with the
laundry being removed".

One of the questions you had was regarding the size of the existing water meters at this
property. This property is currently served with two water meters, both of which are
5/8". Based on the spreadsheet you had sent me with the proposed number of plumbing
fixtures in each of the 7 trailers, a 1 ½" water meter will be required to serve this project.
(See enclosed fixture count sheet). Therefore, a new 1 ½" water service will be required
to serve this property, and both of the existing 5/8" water services will be required to be
abandoned at the water main, at the expense of the owner.

In order to confirm that no fire sprinkler systems or on-site fire protection systems are
required, please submit a statement from the North Tahoe Fire Protection District that the
proposed project is exempt from such fire protection system requirements.

Currently a 1" water main runs along the rear of this property line. This size of this water
main is not adequate to serve the increased demand of the proposed project.

In order to serve the proposed project, the owner shall be required to extend a new 6"
water main in Trout Avenue to serve this project. Another developer currently has plans
to extend a 6" water main in Trout Avenue from Fox Street west approximately 100 feet,
which is scheduled to be constructed during the summer of 2006. It shall be the
responsibility of the owner for 8679 Trout to extend a new 6" water main in Trout

S:\APN 090-124-024\sewer and water svc.doc
PO Box 139, Tahoe Vista, CA 96148 • (530) 546-4212 • FAX (530) 546-2652 • 875 National Ave.
e-mail: ntpud@ntpud.org • website: www.ntpud.org

Avenue from the end point of the new main in Fox westwards to the western edge of the property referenced above, for a total distance of approximately 250 feet. (See enclosed schematic drawing, showing the location of existing and proposed water mains). The new water main shall be constructed per District standards and specifications, and upon completion and acceptance, the new water main shall be dedicated to the District. The new 1 ½" water service will be required to be connected to the new 6" water main in Trout Avenue.

There are currently two sewer laterals that front this property. Standard District procedures require that all unused sewer laterals that front a property must be abandoned at the main, at the expense of the owner, per District standards. However, in an effort to facilitate future redevelopment, changed use at this property, or property line adjustments, the District shall waive this requirement. Therefore, the property owner shall be allowed to use one or both of the existing sewer services that front this property.

In order to facilitate the construction of the proposed project and the necessary water facilities to serve this project, it is recommended that you meet with District staff to discuss the requirements set forth in this letter. To set up such a meeting, you may contact Jessica Morris, Administrative Assistant, at (530) 546-4212.

Additionally, the owner of this property must complete and return the enclosed Fee Acknowledgement Form and submit the $2,000.00 security deposit to the address below (per NTPUD Ordinance 339).

> North Tahoe Public Utility District
> Attn: Engineering Division
> P.O. Box 139
> Tahoe Vista, CA 96148

Upon completion of the project, the security deposit will be returned, minus outstanding/unpaid charges. Please be aware that progress on your project may be delayed until the Fee Acknowledgement Form and security deposit have been received.

Should you have any questions, please contact me at (530) 546-4212.

Sincerely,

Coral R. Taylor
Assistant Engineer

/ct

S:\APN file\090-124-024\sewer and water svc.doc

cc:    Leon C. Schegg, Public Works Director/Assistant GM
Steve Rogers, General Manager/CEO
Robert Hopkins, Utility Operations Manager
Jessica Morris, Administrative Assistant
Bob Orr, Public Works Construction Inspector
Steve Hook, North Tahoe Fire Protection District, P.O. Box 5879, Tahoe City, CA 96145
Robertson Engineering Inc., 2300 Bethards Drive, #L, Santa Rosa, CA 95405
Lovett Silverman Construction Consultants, 333 Bryant Street, Suite 310, San Francisco, CA 94107

Enclosures (3) -   Fixture Count Sheet
- Schematic drawing of existing and proposed water mains
- Fee Acknowledgement Form

S:\APN file\090-124-024\sewer and water svc.doc

RESOLUTION NUMBER 2005-8
A RESOLUTION OF THE
NORTH TAHOE PUBLIC UTILITY DISTRICT
ESTABLISHING POLICY DIRECTION RELATED TO THE NEED FOR
REHABILITATION OF EXISTING KINGS BEACH GRID WATER SYSTEM

WHEREAS, the District Board of Directors' review and analysis of the existing Kings Beach Grid water system has shown that it is outdated and in need of rehabilitation; and

WHEREAS, consistent with District's Engineering staff review and analysis of the condition of the kings Beach Grid water system as presented to the Board on May 10, 2005, the Board of Directors has found that it is in the best interest of the District to make the following policy determinations that provide staff with direction:

1. The KB Grid water system is an existing and developed system serving the properties within its boundaries and, as such, rehabilitation and relocation of the backyard water mains to the street is a District obligation.

2. Existing water customers have been served by backyard laterals connected to the backyard water main. Installation of new front service laterals is necessary for the property owner to continue to have water service. The costs associated with installation of front service laterals to point where it connects with District water system is a property owner obligation.

3. Developers of vacant properties within the KB Grid Water system who have a need for immediate access to an existing backyard water main may connect to the existing water system on an interim basis subject to the following conditions:

    a. Recordation of a 7.5 feet easement in favor of the District on the rear portion of Developer's property to allow the District access to maintain water main during the interim time period. The District will abandon easements for individual segments of the backyard water system at such time as all users of the segment have connected to front street systems and the segment is not required for the overall District water system; and

    b. Developer installs at Developer's expense both the necessary service lateral to connect to existing backyard water main and a dry front service lateral for future connection to front street water mains; and

    c. Developer must comply with all District design standards; and

    d.  Developer provides the District with an easement in the front of the property, if necessary, for maintenance.

4.  To continue the District's current water main extension policy and practice requiring property owners that do not presently have access to the District's existing water/sewer mains to build water/sewer main extensions necessary to serve that property to the District standards. Such water main extensions may include dedication of easements and/or related permits to accomplish this construction, and such construction is done at the developer's expense. The District's policy continues to be that construction costs necessary to support new development that cannot access existing water mains should be borne by the developer and not by existing District ratepayers.

NOW THEREFORE, the General Manager/CEO is directed to develop and implement a KB Grid Water System Rehabilitation program to resolve this issue consistent with the policy determinations made by the Board of Directors. Implementation of such program will require subsequent Board actions and approvals. The program shall include the engineering design plan for water system rehabilitation and relocation and a financing strategy and plan to pay for costs of said program while providing interim provisions allowing for development of vacant parcels within the KB Grid that have access to existing water mains.

PASSED AND ADOPTED THIS 10TH DAY OF MAY, 2005, BY THE FOLLOWING ROLL CALL VOTE:

AYES: Bergmann, Mooney, Schwartz, Lewis, Lanini

NOES: None

ABSENT: None

_____
S. Lane Lewis, President

ATTEST:

_____
Leon C. Schegg, Acting Clerk of the Board

**Exhibit B**



# NORTH TAHOE
# PUBLIC UTILITY DISTRICT

May 16, 2006

Attn: John Anderson
8679 Trout LLC
P.O. Box 3705
Olympic Valley, CA 96146-3705

Re:   8679 Trout Avenue – APN 090-124-024 – Water and Sewer Services for
      Reconstructed Mobile Home Park

Dear Mr. Anderson,

Thank you for meeting with my supervisor, Lee Schegg, and me to discuss the proposed
project at the property referenced above. Per our discussion, this project will consist of
an upgrade of an existing 7 unit trailer park to meet TRPA grading requirements, to
replace the existing utilities on site, and to replace the previous trailers with more modern
mobile homes.

This letter was written in response to your fax sent on May 5 and to summarize the
conclusions discussed at our meeting.

This property is currently served by two ¾" water meters, which was verified by District
staff.

The owner was previously required to extend a new 6" water main in Trout Avenue to
serve this project. However, after reviewing this requirement with respect to the Kings
Beach Grid Policy (enclosed), the property owner will not be required to extend the water
main in Trout Avenue.

The property owner will be allowed to continue to receive service from the existing rear
property water main subject to the following conditions:
1. The property owner installs a separate (dry) service line from the front property
   line to the interior of the structures' foundation(s) for future connection. It is
   recommended that the owner connect this dry service line to the existing
   plumbing within the foundation(s) and install a valve in the 'off' position so that
   the service line is empty (dry). (This will avoid the potential for bacterial
   growth). The end of the service line at the front property line shall be capped and
   boxed in a District-approved water meter box.

S:\APN 0\s\090-124-024\sewer and water svc2.doc
PO Box 139, Tahoe Vista, CA 96148 • (530) 546-4212 • FAX (530) 546-2652 • 875 National Ave.
e-mail: ntpud@ntpud.org • website: www.ntpud.org

2.  The owner understands that the cost of meeting the above conditions shall be borne by the owner, and not the District.

As a water main extension will not be required, the property owner will no longer be required to complete and submit a Fee Acknowledgement Form or the $2,000.00 security deposit.

Should you have any questions, please contact me at (530) 546-4212.

Sincerely,

Coral R. Taylor
Assistant Engineer

/ct

cc:     Leon C. Schegg, Public Works Director/Assistant GM
        Steve Rogers, General Manager/CEO
        Robert Hopkins, Utility Operations Manager
        Reeca Jurach, Utility Operations Coordinator
        Jessica Morris, Administrative Assistant
        Bob Orr, Public Works Construction Inspector
        Steve Hook, North Tahoe Fire Protection District, P.O. Box 5879, Tahoe City,
            CA 96145
        Robertson Engineering Inc., 2300 Bethards Drive, #L, Santa Rosa, CA 95405
        Lovett Silverman Construction Consultants, 333 Bryant Street, Suite 310, San
            Francisco, CA 94107

Enclosures (1) - Resolution Number 2005-8 "A resolution of the North Tahoe Public
            Utility District establishing policy direction related to the need for
            rehabilitation of existing Kings Beach Grid water system"

S:\APN file\090-124-024\sewer and water svc2.doc

**Exhibit C**



**Exhibit D**



**north tahoe**
PUBLIC UTILITY DISTRICT

October 22, 2009

John Anderson
Denny's Trailer Park
548 Brannan Street, Suite 311
San Francisco, CA 94107

RE:   Request for Information for Denny's Trailer Park, 8679 Trout Avenue, Kings
       Beach California- APN 090-124-024

Dear Mr. Anderson,

This letter is response to requests made on your behalf by Susan Simon of Simon
Environmental Planning.

The proposed parcel line adjustments of Placer County project PSUB T20090079 will
create seven separate parcels. The resulting parcels will be eligible for service once the
sewer and water facilities for each parcel have been configured per District Ordinances.
The new parcels will be eligible once the following have been completed:

- The existing sewer and water entitlements shall be transferred to one of the
  proposed parcels. The remaining six parcels shall execute a District Application
  for Service.
- A separate and independent sewer lateral and water service shall be provided for
  each parcel resulting from this project. Furthermore, all service lines shall be
  constructed within the parcel or within a utility easement satisfactory to the
  District.
- Denny's Trailer Park will extend the 6" water main in Trout Avenue from it's
  current termination point near Fox Street to the western boundary of parcel 090-
  124-024.
- The point of service for each parcel will be relocated to the water main in Trout
  Avenue.
- The property owner/developer shall be required to adhere to all District
  ordinances, standards, specifications, details, and requirements, and will be
  subject to all relevant inspections and fees generated by the proposed project.

District Ordinances require individual water services and sewer laterals for each parcel
unless they are under common ownership. District Ordinances allow properties with

R:\APN file\090-124-024 - Dennys trailer park\Eng Letter 101909.doc

multiple units under the same ownership to be served by one water service and one sewer lateral, but if these multiple units are divided and sold separately, each unit shall be served by its own water service and sewer lateral.

Section 3.01.C of the District's Sewer Ordinance requires a separate sewer lateral for every parcel, and that no land division resulting in structures in different ownership being served by the same service lateral shall be allowed:

> *A separate and independent sewer lateral shall be provided for every parcel. Where more than one structure or building exists on a parcel and are under common ownership, they may share a common service lateral.*

> *Where service by an independent sewer lateral is impossible or not practical, the Manager may allow service through a lateral constructed on an easement satisfactory to the District. Nothing herein shall allow structures in different ownership to be served by the same service lateral.*

> *No land division resulting in structures in different ownership being served by the same service lateral shall be allowed. Prior to the recording of any final map resulting in the creation of parcels, which if sold to different persons would result in structures in different ownership's being served by the same service lateral, independent service to said structures shall be provided in conformance with the provisions of this Ordinance. In lieu of construction, submission and approval of plans and bonding for completion acceptable to the Manager shall be accepted.*

Section 3.04 of the District's Water Ordinance requires a separate water service for every parcel, and that no land division resulting in structures in different ownership being served by the same water meter shall be allowed:

> *Two or more structures on the same parcel or contiguous parcels in the same ownership as of the effective date of this Ordinance may be served by one meter. Should the parcel be split and sold to another owner, each resulting parcel shall have a separate water service. Connection charges shall be paid as shown in EXHIBIT "A", WATER RATES, for each structure built or existing on the parcels. When a structure exists or is placed on each parcel, a new connection charge is due, and a credit for the original connection fee paid shall be given.*

> *The installation and/or paying the costs for the District to install a new meter to serve the resulting parcel shall be accomplished prior to the effective date of the parcel split or close of escrow in the event of a sale. Responsibility for all charges, connection fees, and meter installation fees shall be the responsibility of the property owner of record.*

Please contact me discuss the required actions listed above and I will revive the Line Extension Agreement drafted earlier for the water main extension. If you are unable to complete these items, you may request a Variance to District Ordinances.

The District has not inspected or approved the existing sewer collection and water distribution systems installed on the subject parcel. No deficiency notices were issued because the District's procedures, i.e. Plan Review Request, Placer County's Notice of Intent to Serve application, and complete project plan submission, have not taken place. The District takes no responsibility for the quality, material, or manner of construction of the sewer and water facilities within the subject parcel.

Should you have any questions, please contact me at (530) 546-4212.

Sincerely,

David T. Berry
Engineering Technician

/dtb

cc:    General Manager/CEO
       Associate Engineer
       Simon Environmental Planning
       Maywan Krach, Community Development Technician, Placer County

R:\APN file\090-124-024 - Dennys trailer park\Eng Letter 101909.doc

**Exhibit E**



**north tahoe**
PUBLIC UTILITY DISTRICT

December 15, 2009

Placer County Community Development Resource Agency
Maywan Krach, Community Development Technician
3091 County Center Drive, Suite 190
Auburn, California 95603

RE:   Denny's Trailer Park (PSUB T20090079), 2nd Submittal
      8679 Trout Avenue, Kings Beach CA – APN 090-124-024

Dear Ms. Krach:

The District has reviewed and commented on the planning submittal. Specifically, the applicant's response to the North Tahoe Public Utility District's (District) response to Placer County's 1st Submittal in the letter dated March 27, 2009:

> *"A variance application has been submitted to the District to allow for a shared sewer lateral for all 7 parcels as opposed to the required independent sewer laterals. The variance will require the applicant to address this within the CCRs, requiring the Homeowners Association to be responsible for maintenance of the sewer lateral on the interior of the parcel."*

A Variance Application has not been received by the District. Once submitted, the variance can be presented to the District's Board of Directors for consideration.

> *"The applicant has given the District information to review regarding sewer and water capacity requirements."*

The information provided does not meet the District's standards. As previously conveyed to the applicant and the County, the District needs to complete a standard plan review of the new construction on the parcel(s) before approving connection to the sewer and water systems. The following documentation is required for the review:

1. Site plan showing all sewer and water facilities (existing and proposed)
2. Topography and proposed slopes and inverts of sewer facilities
3. Floor plans of each unit clearly showing all proposed fixtures including hose bibs, floor drains, etc.
4. Sewer and water capacity requirements
5. All items must be prepared and wet stamped by a licensed civil engineer.

\\ntpudserver02\NewMom\APN file\090-124-024 - Dennys trailer park\P County Response PSUB T20090079 2nd submittal.doc

AS-BUILT plans of the sewer collection and water distribution systems shall be submitted to the District, in a digital and a reproducible format, prior to acceptance of final completion of the proposed project.

As described in the attached letter to the applicant, the proposed parcels will be eligible for service once the following conditions have been met:

- The existing sewer and water entitlements shall be transferred to one of the proposed parcels. The remaining six parcels shall execute a District Application for Service.
- A separate and independent sewer lateral and water service shall be provided for each parcel resulting from this project. Furthermore, all service lines shall be constructed within the parcel or within a utility easement satisfactory to the District.
- Denny's Trailer Park will extend the 6" water main in Trout Avenue from its current termination point near Fox Street to the western boundary of parcel 090-124-024.
- The point of service for each parcel will be relocated to the water main in Trout Avenue.
- The property owner/developer shall be required to adhere to all District Ordinances, standards, specifications, details, and requirements, and will be subject to all relevant inspections and fees generated by the proposed project.

District inspection of sewer collection and water distribution systems will be required to determine if the property is in compliance with District Ordinances.

The owner/developer is responsible for all costs associated with the connection of the services to the proposed project including, but not limited to, the District's costs to review, approve, inspect, and document the improvements.

Should you have any questions or require additional information, please contact me at (530) 546-4212.

Sincerely,

David T. Berry
Engineering Technician

cc:      General Manager/CEO
         Administrative Assistant

Enclosure (1): October 22, 2009 letter to John Anderson

**Exhibit F**

**Applicant**

Name: _Susan Simon_          Phone: _530 577-0406_

Address: _PO Box 183, SLT, CA 96156_

Legal Owner(s) of Property

Name: _8679 Trout LLC, / John Anderson_  Phone: _510 418-9514_

Address: _C/o Zeising, 107 Reed Ranch Rd., Tiburon, CA 94920_

Property Address: _8679 Trout, Kings Beach CA_

Assessor's Parcel Number: _90-124-24_

Describe Variance Request:

_Refer to attachment A - cover letter_

What is the minimum variance that will alleviate hardship?

_Refer to Attachment A - Letter_

Are there special circumstances which prevent compliance with the District's Ordinances?
If so, explain _Refer to Attached cover Letter_

Site Map (if applicable) Attached?      Yes _X_      No _____

I certify that the information given above is true and complete to the best of my knowledge and I understand the fee is non-refundable. I have read the attached conditions and my signature below signifies my understanding.

| | | |
|---|---|---|
| Applicant's Signature | Print Name | Date |
| Legal Owner Signature | _John Anderson_ Print Name _for 8679 Trout LLC_ | _10/20/09_ Date |
| Other Owner Signature | Print Name | Date |

---

**VARIANCE REQUEST APPLICATION**

NORTH TAHOE PUBLIC
UTILITY DISTRICT
875 National Avenue
PO Box 139
Tahoe Vista, CA 96148

Phone: 530-546-4212
Fax: 530-546-2652
Email: ntpud@ntpud.org

**NOTE:**
THE VARIANCE REQUEST FEE OF $1,000 MUST BE SUBMITTED WITH THE APPLICATION.

THIS FEE IS NON-REFUNDABLE. THERE ARE NO GUARANTEES THAT YOUR APPLICATION WILL BE APPROVED.

---

| (For NTPUD Internal Use Only) Description (Section) | Required | Requested | Received | |
|---|---|---|---|---|
| Easements | | | | Date Appl. Rcvd: _1/22/10_ |
| Standard Details | | | | Filing Fee Paid: $ _1,000 —_ |
| Sewer Ordinance | _3.01.C_ | | | |
| Water Ordinance | _Resolution 2005-8_ | | | Receipt No.: _A-23533_ |
| Other | | | | |

On _3.9.2010_ the Engineering Department:   Approved  (Denied)  this application subject to the conditions attached.
(circle one)

cc: General Manager/CEO
    Assistant General Manager
    Engineering Department

_David T Berry_          _3.9.2010_
Engineer/Reviewer          Date

R:\Engineering\Forms\Variance\Variance Request Form.doc

p.2



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

Dave Berry
North Tahoe Public Utility District
PO Box 139
Tahoe Vista, CA 96148

January 16, 2010

Dear Mr. Berry,

8679 Trout Avenue LLC (Owner) submits this letter as a request for a variance to the following two requirements of the North Tahoe Public Utility District (NTPUD) sewer and water ordinances.  These requirements were triggered by the submittal of a major subdivision application and were listed in a letter from you dated October 26, 2009 outlining compliance to NTPUD ordinances.  The Owner requests a variance to the following requirements:

    a. Extension of the 6" water main in Trout Avenue from its current termination point near Fox Street to the western boundary of parcel 190-124-024

    b. The requirement to provide a separate and independent sewer lateral for each parcel resulting from this project.

Denny's Trailer Park is an existing seven unit mobile-home park operating under a permit from the California Department of Housing and Community Development (HCD).  The park is comprised of seven legal non-conforming lots of record which the owner proposes to reconfigure through a major subdivision process, to conform to the layout of the existing manufactured homes.  This will allow the owner to sell the individual home sites to the residents, thereby converting the rental park to resident ownership.  The proposed subdivision does not involve any physical changes to the property but merely a change in the form of ownership of the park.  Instead of one owner, there will now be seven individual owners governed by a homeowners association.



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

The park was reconstructed in 2005/2006 under a HCD permit.   Reconstruction of the park included replacing the original 7 substandard trailers with new manufactured housing.   A commercial laundry and public bathroom were removed permanently allowing water usage on the property to decrease dramatically.   NTPUD has always supplied sewer and water service to the park and continues to do so today.

At the time of reconstruction and in agreement with NTPUD, the Owner was allowed to continue to receive service from the existing water main to the rear of the property.  However, a separate dry service line was installed from the front property line to the interior of the structures foundations allowing for a future connection to the 6" water main proposed in Trout Avenue.  Since this was not a new development project nor an expansion of an existing development, it was determined the Owner would not be responsible for extending the water main in Trout Avenue to service his property.  Refer to the attached letter from NTPUD dated May 16, 2006, from Coral R. Taylor, Assistant Engineer.

The park is currently serviced by two ¾" meters and even at full occupancy, only one is being used.  There have been no issues or complaints concerning water pressure on the property.

The Owner has reviewed the requirements included in your letter dated October 26, 2009 and responds with the following:

- The existing sewer and water entitlements shall be transferred to one of the proposed parcels.  The remaining six parcels shall execute a District application for Service.

  *Response:  The owner will comply with this requirement.*

- A separate and independent sewer lateral and water service shall be provided for each parcel resulting from this project.  Furthermore, all service lines shall be constructed within the parcel or within a utility easement satisfactory to the District.

  *Response:  The Owner will install separate water meters for each parcel resulting from the subdivision of the property.  However, a variance is requested regarding the provision of a separate sewer lateral for each*



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

*parcel.  The Owner requests to maintain the current sewer distribution system, allowing all seven units which after subdivision approval, will be on 7 separate parcels, to connect to a single sewer lateral. At the request of NTPUD the Owner will record a Hold Harmless agreement on each parcel resulting from the proposed lot reconfiguration/subdivision which will provide notice to all subsequent purchasers of the property or any units on the property of the existence of a shared sewer lateral and their obligation to indemnify the District against all liability resulting from any sewer backups or spills on the property.  The Owner will also update the CC & Rs to include language regarding the Hold Harmless Agreement.*

- Denny's Trailer Park shall extend the 6" water main in Trout Avenue from it's current termination point near Fox Street to the western boundary of parcel 190-124-024.

*Response:  The Owner requests a variance from this requirement.  As demonstrated above, this is not a new project and the reconstructed project has not increased water demand over what existed previously.  In fact since redevelopment water usage has decreased.  The reconstructed park consists of 7 new manufactured homes designed to the efficiency of HCD standards which require low consumption water fixtures.  As demonstrated by the attached letter from John Anderson, owner and project engineer, removal of the commercial laundry and use of low consumption water fixtures has reduced water consumption by one half from prior to redevelopment of the park. There are two existing ¾" water meters on the property and now only one is necessary to service all seven units.   Therefore, the existing smaller main to the rear of the property has been sufficient in servicing this property.*

- The point of service for each parcel will be relocated to the water main in Trout Avenue.

*Response:  As discussed above, the Owner is requesting a variance to the requirement of extending the water main down Trout Avenue.*

- The property owner/developer shall be required to adhere to all District ordinances, standards, specifications, details and requirements and will be



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

subject to all relevant inspections and fees generated by the proposed project.

*Response: With the exception of the variance requests to the requirements of extending the water main down Trout Ave and providing separate sewer laterals for each parcel, the Owner will comply with the ordinances, standards, specifications, details, and requirements outlined in your letter dated October 26, 2009.*

Please find the following attachments:

- NTPUD Variance Request Application

- $1,000 filing fee

- Copy of a letter from Dave Berry, NTPUD dated October 26, 2009.

- Copy of a letter from NTPUD dated May 16, 2006.

- Copy of the Utilities plan originally submitted in 2006.

Thank you for your consideration of the foregoing. Please let me know if you have any questions or require additional information.

Sincerely,

Susan Simon

Susan Simon

**Exhibit G**



**PUBLIC UTILITY DISTRICT**

February 10, 2010

Susan Simon
P.O. Box 113
South Lake Tahoe, CA  96156

RE:     Variance Request Application for 8679 Trout Avenue, Kings Beach California
        APN 090-124-024

Dear Ms. Simon:

The North Tahoe Public Utility District (District) Engineering Department has reviewed your
Variance Request Application.  The Engineering Department is not recommending approval of
your request for variance from District standards.  Your application for variance will be reviewed
at the Development and Planning Sub-Committee meeting of the District Board of Directors
scheduled for 8:00am on Monday, February 22, 2010, at the North Tahoe Event Center.  You are
requested to attend this meeting to make a presentation to the Committee on your application for
variance.

The Development and Planning Committee members will then make their recommendation to
the Board at the March 9, 2010 Board of Directors Meeting.

Should you have any questions or require additional information, please contact me at (530) 546-
4212.

Sincerely,

David T. Berry
Engineering Technician

cc:     General Manager/CEO
        Administrative Assistant
        John Anderson

R:\Engineering\APN file\090-124-024 - Dennys trailer park\Variance Request Response 100210.doc

**Exhibit H**

| | |
|---|---|
| From: | David Berry |
| To: | Susan Simon |
| Cc: | John Anderson; David Berry |
| Subject: | NTPUD D&P Meeting |
| Date: | Thursday, February 18, 2010 4:55:33 PM |

Susan,

The Development and Planning Sub-Committee meeting of the District Board of Directors has been rescheduled for 12:00pm – 2:00pm on Monday, February 22, 2010, at the North Tahoe Event Center.

I have cc'd John Anderson using the email address I have.  Please make sure that he receives this information.

Please respond to confirm that you have received this notice.

Thanks,
David

DAVID T. BERRY
ENGINEERING TECHNICIAN
NORTH TAHOE PUBLIC UTILITY DISTRICT
875 NATIONAL AVENUE / PO BOX 139
TAHOE VISTA, CALIFORNIA 96148
TELEPHONE: (530) 546-4212
FAX: (530) 546-2652



PUBLIC UTILITY DISTRICT

**Exhibit I**



PO Box 113, South Lake Tahoe, CA 96156
530.577.0406
www.simonplanning.com

Dave Berry
North Tahoe Public Utility District
PO Box 139
Tahoe Vista, CA 96148

March 3, 2010

Dear Mr. Berry,

8679 Trout Avenue LLC (Owner) submits this letter as a formal request for a continuance from NTPUD Board consideration on March 8, 2010 to their variance application submitted in January, 2010.

The application requested a variance to the following two requirements of the North Tahoe Public Utility District (NTPUD) sewer and water ordinances.

a. Extension of the 6" water main in Trout Avenue from its current termination point near Fox Street to the western boundary of parcel 190-124-024

b. The requirement to provide a separate and independent sewer lateral for each parcel resulting from this project.

Despite a request by the Owner to withdraw the application, the NTPUD's Development and Planning Committee heard the item at their January 22, 2010 meeting recommended denial and made a motion to move forward to Board level. We have been advised that the variance is scheduled to be heard at the above mentioned Board meeting and we request to continue the item to a later date. The Owner would like more time to explore their options.

Thank you for your consideration of the foregoing. Please let me know if you have any questions or require additional information.

Sincerely,

Susan Simon

Susan Simon

**Exhibit J**



**north tahoe**
PUBLIC UTILITY DISTRICT

March 9, 2010

Susan Simon
P.O. Box 113
South Lake Tahoe, CA  96156

RE:   Variance Request Application for 8679 Trout Avenue, Kings Beach California
       APN 090-124-024

Dear Ms. Simon:

The North Tahoe Public Utility District (District) Board of Directors voted to deny the request
for variance from the District requirements for a separate and independent sewer lateral for each
parcel and the extension of the 6" water main in Trout Avenue.

Should you have any questions or require additional information, please contact me at (530) 546-
4212.

Sincerely,

David T. Berry
Engineering Technician

cc:    General Manager/CEO
       Administrative Assistant
       John Anderson
       Dave Ruben, North Tahoe Fire Protection District
       Maywan Krach, Placer County Community Development Resource Agency

Enclosure (1): Variance Request Application submitted by Susan Simon

R:\Engineering\APN file\090-124-024 - Dennys trailer park\Variance Request Denial 100309.doc

**Exhibit K**

STATE OF CALIFORNIA, BUSINESS, TRANSPORTATION AND HOUSING AGENCY          Arnold Schwarzenegger, Governor
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**DIVISION OF CODES AND STANDARDS**
1800 THIRD STREET, SUITE 260, P.O. BOX 1407
SACRAMENTO, CALIFORNIA 95812-1407
(916) 445-9471   FAX (916) 327-4712
From TDD Phones 1 (800) 735-2929
www.hcd.ca.gov



**April 21 2008**


**Information Bulletin 2008 – 10 (MP)**


**TO:**      **Local Government Planning Agencies**
             **Local Building Officials**
             **Mobilehome Park Operators and Residents**
             **Mobilehome Park Interested Parties**
             **Division Staff**


**SUBJECT:**  **VALIDITY OF LOCAL ORDINANCES RELATING TO INSTALLATION OF NEW MANUFACTURED HOMES AND/OR SALE OR CONVERSION OF MOBILEHOME PARKS**


A number of local governments are enacting or enforcing ordinances relative to the physical operation and condition of mobilehome parks and recreational vehicle parks that are in conflict with the preemptive nature of the Mobilehome Parks Act ("MPA"), found in Health & Safety Code ]"H&SC"] sections 18200, et seq., and the Special Occupancy Parks Act ("SOPA"), found in H&SC sections 18665, et seq..  Throughout this memorandum, there are references to "manufactured homes", "mobilehome parks" and "the Mobilehome Parks Act"; however, unless otherwise noted, the same issues and rules apply to recreational vehicles or park model trailers, recreational vehicle parks, and the Special Occupancy Parks Act.

This memorandum's purpose is to provide information and clarification for local government officials and those involved with mobilehome parks and manufactured home installations or sales that state law restricts local government authority attempting to regulate the physical structure and operation of mobilehome parks—whether privately-owned, resident-owned, or in the process of conversion.  For example, local ordinances which impose inspection, lot standards, or infrastructure requirements within a mobilehome park at the time of home installation, conversion, or sale generally are expressly and/or impliedly preempted by the MPA, and the only valid authority for imposing and enforcing these requirements is the California Department of Housing and Community Development ("HCD") or local enforcement agencies that have assumed jurisdiction to enforce the MPA.

<u>Statutory Provisions Governing Preemption</u>

California courts have established guidelines for when local ordinances are preempted by state law. The general rule is that, if an otherwise valid local ordinances conflicts with preemptive state law, it is invalid. A "conflict" exists if an ordinance "duplicates, contradicts, or enters an area fully occupied by state law, either expressly or by implication".  In addition, preemption is implied if the area is so fully covered by state law as to indicate it is exclusively a matter of state concern; it is partially covered by state law but the state coverage indicates that a paramount state concern will not allow additional

Information Bulletin 2008-10
Page 2

local action; or there is partial state coverage but the adverse effect of a local ordinance on state residents outweighs the possible benefit to the locality.

The MPA contains an express preemption, with minimal express authority for local ordinances. In addition, the Legislature's findings support its intent to allow only very restrictive authority for local government action within the boundaries of a mobilehome park. In the MPA, subdivision (a) of H&SC section 18300 provides that "the MPA and HCD regulations apply to all parts of the state and supersede any ordinance enacted by any city, county, or city and county, whether general law or chartered, affecting parks." Subdivision (g) and (h) of section 18300 provide the limited specific exceptions to the general state preemption, stating that the MPA does not preclude local governments, within the reasonable exercise of their police powers, from doing any of the following:

 * Enacting certain zones for mobilehome parks within the jurisdiction, or establishing types of uses and locations such as senior mobilehome parks, mobilehome condominiums, or mobilehome subdivisions within the jurisdiction. [subdivision (g)(1)]

 * Adopting ordinances, rules, regulations or resolutions prescribing park perimeter walls or enclosures on public street frontage, signs, access, and vehicle parking; or prescribing the prohibition of certain uses for mobilehome parks. [subdivision (g)(1), emphasis added]

 * Regulating the construction and use of equipment and facilities located outside of a manufactured home or mobilehome used to supply gas, water, or electricity thereto or to dispose of sewage *when the facilities are located outside a park.* [subdivision (g)(2), emphasis added].

 * Requiring a permit to use a manufactured home or mobilehome *outside a park* which permit may be refused or revoked if the use violates the MPA or the Manufactured Housing Act. [subdivision (g)(3), emphasis added.]

 * Requiring a local building permit to construct an accessory structure for a manufactured home or mobilehome when the manufactured home or mobilehome is *located outside a mobilehome park*,. [subdivision (g)(4), emphasis added]

 * Prescribing and enforcing setback and separation requirements governing manufactured home, mobilehome, or mobilehome accessory structure or building *installation outside of a mobilehome park.* [subdivision (g)(5), emphasis added]

Other provisions directly addressing preemptive authority include H&SC sections 18253, 18400.1, 18605, 18610, and 25 CA Code of Regulations (CCR), section 1000.

### Permissible Local Government Regulation and Standards

Local governments do have some authority to regulate certain physical components in a mobilehome park. Also, pursuant to subdivision (b) of H&SC section 18300, they may assume MPA enforcement authority and become a "local enforcement agency" ("LEA"), rather than relying on HCD inspectors.

As stated above, subdivision (g) of H&SC section 18300 provides express authority for local governments, within the reasonable exercise of police powers, to adopt zoning ordinances to

Information Bulletin 2008-10
Page 3

allow or prohibit parks and certain park uses, and for park perimeter walls or enclosures on public street frontage, signs, access, and vehicle parking. Also, subdivision (h) of that section allows local governments, within specified parameters, to establish new park density, to require recreational facilities, and to require setback and separation requirements for manufactured housing <u>outside of parks</u>, but no greater than those permitted by applicable ordinances for other affordable housing forms.

H&SC section 18691, subdivision (b), permits a local government that is the MPA enforcement agency to enforce within parks its own fire code that imposes standards equal to or greater than the restrictions in the California Building Standards Code ("CBSC") and other state requirements. In addition, a local government which is not a local enforcement agency may assume fire prevention authority and impose certain portions of its fire code within a park.

Subdivision (e) of H&SC section 18501 and Title 25 CCR, section 1032, permit a local government to approve or deny approval for any construction permit to build or increase the size of a park or to add multifamily manufactured housing based on "compliance with all <u>valid</u> local planning health, utility and fire requirements". (H&SC §18501, emphasis added). The use of the word "valid" implicitly excludes requirements preempted by the MPA, allowing, for example, flood plain ordinance compliance, the minimum size of a park's land parcel, whether a septic system sewer hook-up is required, where and whether off-site drainage is permitted, and/or the number and spacing of fire hydrants.

Local Ordinance Provisions Which Are Preempted

General Background

In implementing the Legislature's comprehensive statewide program to establish and enforce park standards for construction, maintenance, repairs, and occupancy, the Department's statutory and regulatory standards impose standards for virtually every aspect of a park's or a manufactured home's physical conditions, except for those expressly left to local government action in subdivision (h) of H&SC section 18300.

With respect to construction of a new or expanded park, or installation of multifamily manufactured housing, HCD regulations require evidence of local approvals from the local planning agency; the health, fire, and public works departments; the agency responsible for flood control; the serving utilities; and any other state or federal agency or special district that has jurisdiction and would be impacted by the proposed construction. (25 CCR §§1020.6, 1032). Similarly, HCD or the LEA <u>may</u> require local approvals for construction of a permanent building under the ownership or control of the park within a park <u>if that installation may</u> impact local services. Most other types of construction, replacements, installations, and alterations require an MPA enforcement agency permit and inspections (25 CCR § 1018), but no local approvals.

HCD regulations govern both park construction and manufactured home installation standards and procedures. Generally, the regulations require that a home and other structures on a park lot use not more than 75% of the lot space (25 CCR §1110) and that the home and structures have specified set-backs and separations from lot lines and structures

Information Bulletin 2008-10
Page 4

(25 CCR §1330). In addition, a "manufactured home" is a specific preemptive definition in H&SC section 18007 and a recreational vehicle (including a park model) is a specifically defined term in H&SC section 18010. As a result, a local government cannot impose restrictions on the minimum or maximum size of a manufactured home to be installed on a mobilehome park lot (ordinance precluding two-story manufactured homes found invalid in *County of Santa Cruz v. Waterhouse* (2005) 127 Cal.App.4th, 1483, 26 Cal.Rptr 3d 543) or whether a park model or recreational vehicle can be installed on a recreational vehicle lot.

Examples of Preempted Ordinance Provisions

The following italicized sentences are examples of local ordinances that have been brought to HCD's attention and that area preempted by state laws and regulations.

*"If there has been no Title 25 inspection within 3 years, one must be obtained".* H&SC sections 18605 and 18610 provide that HCD's rules govern park maintenance and operation. No express or implied exception exists in H&SC section 18300 permitting local governments to impose inspection requirements related to park maintenance.

*"The Park owner shall provide a list of all Title 25 deficiencies found on inspection and evidence that all deficiencies have been corrected."* Pursuant to H&SC sections 18605 and 18610, HCD's rules govern park maintenance and operation. Pursuant to the preemptive restrictions in H&SC section 18300, no express or implied exception exists permitting local governments to impose enforcement requirements related to park maintenance. In addition, the MPA does not require correction of all deficiencies:
    * The MPA expressly permits extended periods for repairs to achieve correction of deficiencies. H&SC section 18420, subdivision (c)(4), permits the enforcement agency to defer repair requirements as long as there is a "valid reason why a violation has not been corrected, including, but not limited to, weather conditions, illness, availability of repair persons, or availability of financial resources...."
    * The MPA permits an inspector to not cite a violation of the MPA if it is not an imminent hazard. (subdivision (d) of H&SC section 18420)

*"Written documentation from HCD shall be obtained demonstrating that the park complies with all applicable Title 25 requirements."* The MPA governs performance of inspections and issuance of reports of violations or corrections and does not require HCD or an LEA to perform inspections to ensure compliance with "all applicable" Title 25 requirements. A "complaint inspection" involves resolution of a specific complaint. A "park maintenance inspection" involves identification and resolution of only hazards which are either an immediate risk to life, health, and safety, requiring immediate correction; or those constituting unreasonable risks to life, health or safety, requiring correction with 60 days (H&SC §18400.3). No other violations of Title 25 are recorded.

*"Proof of remediation of any Title 25 violations shall be confirmed in writing by the California Department of Housing and Community Development."* In addition to the obvious issue that a local government cannot require HCD to perform any duties related to parks, HCD does not have enforcement responsibility for many of the state's parks and therefore has no information regarding any identified violations or proposed or completed remedies in those parks subject to LEA enforcement.

Information Bulletin 2008-10
Page 5

*"Prior to installation of a new home on an existing lot, there shall be two covered and paved parking spaces on the lot."*  Subdivision (f) of Title 25 CCR section 1106 expressly and fully regulates paving for driveways and roadways, stating that paving generally is not required; therefore, local governments may not impose paving requirements. Title 25 CCR sections 1110, 1116, and 1118 regulate lot standards, precluding local government lot standards such as covered parking or a specific number of on-lot spaces.  [While H&SC §18300(g)(1) provides local governments with authority to regulate "vehicle parking", that authority is narrowly interpreted and harmonized with the preemptive nature of the MPA by allowing local government ordinances to reasonably require a specified number of parking spaces within the boundaries of the park (to avoid public street parking), but without imposing their own specific location.]

*"No manufactured home may be installed on a lot of less than 4000 square feet, with a minimum depth of 75 feet and a minimum width of 50 feet, at least a fifteen-foot setback from any other home, and at least a ten-foot separation between all structures on the lot other than an attached cabana or covered patio."*  The MPA implicitly preempts local authority to establish lot sizes by virtue of the standards in 25 CCR sections 1110 and 1118; see also, 25 CCR section 1106(e); in addition, subdivision (g) of H&SC section 18300 allows local governments to establish "density", not lot sizes or locations.  The set-back and separation requirements are expressly established by 25 CCR section 1330; in addition, by implication, local action is precluded with respect to setbacks and separations because, in subdivision (h)(3) of H&SC section 18300, the Legislature authorized local action in this area only for manufactured homes sited <u>outside of</u> mobilehome parks.

*"The sides of the park facing a public street and the sides facing residential construction shall have walls high enough to block sight access of the roofs of the mobilehomes with ivy or other permanent foliage coverage, and no mobilehome shall be closer than 15 feet from the wall or fence."*  The locality is authorized, by subdivision (h) of H&SC section 18300, to regulate only the wall or enclosure on the public street frontage, not other sides of the park.  The locality is authorized to establish a set-back for the wall or enclosure on the public street frontage, but all other set-back and separation requirements (within the boundaries of the park) are preemptively established by the MPA regulations.

*"Every lot in a mobilehome park shall have no more than one mobilehome and one storage shed, and foliage shall be consistent with the surrounding area."*  This ordinance establishes "lot standards".  When H&SC section 18300 was amended in 1981, the express authority for local governments to regulate "landscaping" and establish standards for lots, yards, and park area in mobilehome parks was deleted by the Legislature, depriving local authority for this regulation under the MPA.

*"All on-site utilities shall be installed underground."*  Utility construction requirements are preempted either by the PUC for utility-owned utilities, and/or by Title 25, CCR, which permits overhead utilities. New parks built after 1997 must have gas and electric services owned, operated, and maintained by the serving utility.  See, Public Utilities Code section. 2791, Title 25 CCR, section 1180(g).

Information Bulletin 2008-10
Page 6

*"Prior to final approval of a park conversion, all lots shall be surveyed to be equal in size, clearly demarcated by landscaping, and lot lines approved by the Planning Department shall be recorded with the County Recorder."* A mobilehome park remains a mobilehome park before, during, and after conversion; see, H&SC section 18214, subdivision (a), which provides, ""Mobilehome park" is any area or tract of land where two or more lots are rented or leased, held out for rent or lease, <u>or were formerly held out for rent or lease and later converted to a subdivision, cooperative, condominium, or other form of resident ownership</u>..." (emphasis added)  Thus, the preemptive provisions which applied to a park prior to, during, and after conversion.  The establishment, marking, and movement of lot lines are governed by Title 25, CCR, sections 1104, 1105, 1330, and 1428.  Landscaping is not a proper form of lot marking, and lot lines must either be those in existence or moved and approved pursuant to CCR section 1105.  A local government <u>may</u> require that the final approved lot lines be those consistent with the requirements of Title 25, since the local government has the authority to approve final lot lines as part of a subdivision approval; however, their location and marking must be consistent with Title 25.

### Conclusion

The State Legislature, in its enactment and subsequent amendments to the Mobilehome Parks Act and the Special Occupancy Parks Act, has established clear preemptive authority with regard to state regulation of the physical construction and operational standards for mobilehome parks and recreational vehicle parks.  Conversely, both expressly and impliedly, the Legislature has narrowly limited local government authority to legislatively mandate any activity or requirements with regard to the physical standards, physical operation, or physical status of a park.  A number of local ordinances addressing park standards for construction, maintenance, operations, or conversions to subdivisions or other forms of resident ownership likely are invalid because the two state Acts preempt them.

If you have any questions regarding this memorandum, please feel free to contact our office at the address above.

Sincerely,

Kim Strange
Deputy Director

**Exhibit L**

STATE OF CALIFORNIA -BUSINESS, TRANSPORTATION, AND HOUSING AGENCY                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF LEGAL AFFAIRS
1800 Third Street, Suite 440
P.O. Box 952052
Sacramento, CA 94252-2052
(916) 323-7288
FAX (916) 323-2815



### *Via U.S. Mail and Facsimile*

April 20, 2010

Mr. Neil A. Eskind
Attorney at Law
1345 North Lake Boulevard
Tahoe City, California  96145
Facsimile No. 530-583-8880

Re:    Validity of Subdivision Individual Water Meter Requirements
       North Tahoe Public Utility District/Denny's Trailer Park

Dear Mr. Eskind:

I am following up on our telephone conversation from April 6, 2010, and your
subsequent correspondence dated April 8, 2010, directed to the Department of Housing
and Community Development Legal Affairs Division (the Department). In these
communications, you have asked for the Department's opinion as to whether the
Mobilehome Parks Act (MPA)[1] preempts the North Tahoe Public Utility District (NTPUD)
from requiring the installation of individual water and sewer meters in the Kings Beach
Mobilehome Park/Denny's Trailer Park (the Park) during or following a subdivision of
the Park into individually owned lots and manufactured homes.

I have met with my clients to discuss this matter in an effort to provide you with the
Department's official interpretation of the MPA as it relates to your client's present
concern. The question that was asked, and that the Department is attempting to
respond to, is "whether the NTPUD's ordinance that requires all individually owned
homes to have their own separate water and sewer meter, is preempted by the MPA
when the homes are inside a subdivided Park and the mobilehome lots and homes are
now individually owned?"

The Department understands that your client, NTPUD, has received correspondence
from the attorney, Ms. Sue Loftin, for the developer of the Denny's Trailer Park, Mr.
John Anderson, who asserts that the NTPUD is preempted from enforcing its ordinance

---

[1] Health and Saf. Code, §§ 18200 et seq.

Page 2
April 20, 2010
Denny's Trailer Park

and cites Government Code section 66427.5, the MPA and the recent Court of Appeal opinion, *Sequoia Park Associates*,[2]   The Department has no position on the application of Government Code section 66427.5 to the facts presented as the Department is not the enforcement body of this Code.

Prior to providing you with my client's opinion, in the interest of full disclosure, I must first state that the Department does not have any interest in the prospective lawsuit between the developer, Mr. John Anderson, represented by Attorney Ms. Sue Loftin, and the NTPUD or Placer County. As discussed in this letter, the Department's land use preemptive authority, as it relates to conditions on subdividing land, only relates to cities, counties, and cities and counties, not utility districts. In addition, as noted above, the Department has no enforcement authority, and therefore no opinion, as to the operation of Government Code section 66425. Thus, the Department would not be a proper party in a lawsuit related to the issues you've raised.

Further, the Department's opinion in this correspondence is based solely on the documents provided by you to the Department which include: 1) Letter dated April 8, 2010 from Neil Eskind, Attorney for NTPUD; 2) Letter dated March 18, 2010, from Attorney Sue Loftin representing developer John Anderson; 3) NTPUD Memo dated February 1, 2010, titled "Summary of Correspondence with owner of Denny's Trailer Park;" 4) Fee Acknowledgement Form signed by John Anderson; 5) Letter from North Tahoe Public Utility District to Maywan Krach of Placer County Planning Division dated March 27, 2009; 6) Memo dated March 10, 2009 to Distribution List of County of Placer from Maywan Krach; 7) Simon Environmental Planning letter dated February 25, 2009. None of these documents include facts or requirements related to the Department's enforcement authority. I would also ask that my electronic mail that I sent to you initially on April 6, 2010, be disregarded as it was based on a different understanding of the facts at issue and therefore does not reflect the opinion of the Department.

Subject to the disclaimers above, and notwithstanding my previous email, the Department provides you with the following opinion: The Department opines that the MPA does NOT preempt the NTPUD from enforcing a validly enacted ordinance that requires all individual homeowners who own their own land, including individual manufactured home owners, from installing individual sewer/water meters on their home when a subdivision occurs. The Department understands that Denny's Trailer Park has submitted a subdivision application to the County of Placer in an effort to develop and subdivide the park and then sell the lots as individual lots with manufactured homes.

---

[2] *Sequoia Park Associates v. County of Sonoma* (2009) 176 Cal. App. 4th 1270

Page 3
April 20, 2010
Denny's Trailer Park

The Department further understands that the NTPUD is requiring, as a consequence of this subdivision of the Park lots, that all of the manufactured homes that will be placed on the new individual subdivided lots be required to have individual water/sewer meters installed in order to be serviced by NTPUD. The NTPUD has the lawful authority to maintain and operate the water and sewer systems for North Lake Tahoe outside of the Park. Thus, the NTPUD can require as a condition of service that in order for an individual homeowner to receive water/sewer service the homes must install an individual meter.

As we understand the information you provided, the NTPUD does not have authority to condition subdivision of the lots on individual meter installations; conditions of the subdivision are within the sole authority of the county. NTPUD merely states that if property is subdivided, it must be individually metered. Thus, it is up to the park owner to decide either to subdivide lots and place homes on those lots that will not be able to receive water/sewer service due to refusing to install individual meters on the individual lots, or to subdivide, install the individual meters, and receive utility service. Additionally, it is a decision between NTPUD and the Park owner whether the installation of the individual meters will be outside the perimeter of the Park or on each individual lot.

Further, the Department has no position on the mechanics of the installation of the actual meters, except to say that the NTPUD is preempted by the MPA from requiring the Park owner, in installing the meters inside the Park, to use any particular construction, pipes or piping. All construction and construction materials must be in accordance with the MPA and the California Plumbing Code as referenced at California Code of Regulations, title 25, sections 1240, et seq.

In summary, the basis of this opinion is the information you have pointed out in both the telephone conversation and in your correspondence: the installation of the meters on the individual lots is not an NTPUD condition of the subdivision or the county's approval of the subdivision, but a consequence of the subdivision.

The Department has not reviewed or evaluated any applications, plans, rules or any other related item related to the subdivision of the Denny's Trailer Park, or any recent construction related thereto, and has no further comment other than what is stated above. The Department reserves the right and authority to comment on and/or object to any construction plans related to the individual metering at the time an application for construction is presented to the Department as the enforcement agency and during construction.

Page 4
April 20, 2010
Denny's Trailer Park

Thank you for your bringing this matter to our attention and providing us with the opportunity to weigh in on the issues related to our enforcement authority.  Please feel free to contact me if you require any further assistance.

Very truly yours,

Lisa R. Campbell
Sr. Staff Counsel
Legal Affairs Division
Department of Housing and Community Development

cc: Kim Strange, Dep. Dir. Code and Standards Div.
    Clayton Haas, Asst. Dep. Dir. Codes and Standards Div.
    Ron Javor, Codes and Standards Div.
    Chris Anderson, CSA III, Codes and Standards Div.
    Brad Harward, CSA II, Codes and Standards Div.