UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8679 TROUT, LLC, | No. 2:10-cv-01569-MCE-EFB |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| NORTH TAHOE PUBLIC UTILITIES DISTRICT, NORTH TAHOE PUBLIC UTILITIES DISTRICT BOARD OF DIRECTORS, and DOES 1 THROUGH 10, | |
| Defendants. | |

----oo0oo----

The instant litigation arises over Plaintiff's proposed conversion of a mobile home park from a rental facility to a resident-owned park. The property owner, 8679 Trout, LLC, ("Plaintiff") commenced this litigation in the Placer County Superior Court against North Tahoe Public Utility District and North Tahoe Public Utility District Board of Directors ("Defendants"). Defendants promptly removed.

///

1

Presently before this Court are two motions[1]: (1) Plaintiff's Motion for Partial Remand to the state court; and (2) Defendants' 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted.  For the reasons set forth below, Plaintiff's Motion to Remand will be granted in part and, as a result, Defendants' Motion to Dismiss is moot.

## BACKGROUND[2]

Plaintiff owns land and improvements in the North Tahoe Public Utility District ("NTPUD").  Since late 2006, Plaintiff has operated a rental only mobile home park known as "Denny's Mobilehome Park" ("Park"), consisting of seven mobile home units. This arrangement has been in place for approximately thirty years.  Beginning in early 2006, Plaintiff communicated to Defendants its intention to convert the individual units within the Park from a rental only facility owned by Plaintiff to resident ownership with common ownership of the common facilities.

Plaintiff asserts that Defendants led it to believe that the only additional improvement required was the installation of a separate service line, and that the conversion would be a "continuation of service" from the Defendants' standpoint.
///

---

[1] Because oral argument was not determined to be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Local Rule 230(g).

[2] The factual assertions in this section are based on the allegations in Plaintiff's Complaint unless otherwise specified.

In the Spring of 2009, Plaintiff contacted Defendants to obtain confirmation of service, or a "service letter," for its petition to Placer County for conversion.  Defendants stated that they did not require an application for service, and that such conversions were commonly done in other circumstances without physical changes to the property.  Therefore, Plaintiff began drafting CC&R language to enumerate the requirements for viability of the future owners according to Defendants' specifications.

On October 22, 2009, Plaintiff avers that Defendants altered their position and revised their requirements to include new sewer and water service to each individual unit within the Park before receiving service.  Plaintiff further contends that Defendants advised it to make a variance request on December 15, 2009.  An adjudicatory meeting on the variance was held before the Development and Planning Committee on February 22, 2010 despite repeated requests for a delay or withdrawal of its application.  At the hearing, Defendants' staff recommended denial of the variance unless new water and sewer lines were connected to each individual unit.  The board denied Plaintiff's application.  A subsequent meeting was scheduled before the NTPUD Board on March 9, 2010 to consider the variance.  Plaintiff again requested continuance of the hearing; however, that request along with Plaintiff's request for a variance was denied.

On June 7, 2010, Plaintiff filed the present action, which alleges both state and federal claims, to wit: (1) declaratory relief for violation of California Government Code § 656427.5; (2) inverse condemnation under both the United States and California Constitutions; and (3) violation of 42 U.S.C. § 1983.

1  Defendants removed to this Court on June 21, 2010.  Plaintiff
2  filed its Motion to Remand on July 21, 2010 requesting that this
3  Court remand the state claims and stay the federal causes of
4  action.  Through its motion, Plaintiff contends that a state
5  court must adjudicate the takings claims before they are ripe for
6  federal court review.  Defendants filed an Amended Motion to
7  Dismiss on July 29, 2010.

**STANDARD**

**A.   Motion to Dismiss**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Bell Atl. Corp. v. Twombly, 2007 U.S. LEXIS 5901, 20-22 (U.S. 2007) (internal citations and quotations omitted).
///

4

1 Factual allegations must be enough to raise a right to relief
2 above the speculative level.  Id. at 21 (citing 5 C. Wright & A.
3 Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d
4 ed. 2004) ("The pleading must contain something more...than...a
5 statement of facts that merely creates a suspicion [of] a legally
6 cognizable right of action").

7     If the court grants a motion to dismiss a complaint, it must
8 then decide whether to grant leave to amend.  The court should
9 "freely give[]" leave to amend when there is no "undue delay, bad
10 faith[,] dilatory motive on the part of the movant,...undue
11 prejudice to the opposing party by virtue of...the amendment,
12 [or] futility of the amendment...."  Fed. R. Civ. P. 15(a); Foman
13 v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is
14 only denied when it is clear that the deficiencies of the
15 complaint cannot be cured by amendment.  DeSoto v. Yellow Freight
16 Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

**B.  Motion to Remand**

20     A defendant may remove any civil action from state court to
21 federal district court if the district court has original
22 jurisdiction over the matter.  28 U.S.C. § 1441(a).  Generally,
23 district courts have original jurisdiction over civil actions in
24 two instances: (1) where there is complete diversity between the
25 parties, or (2) where a federal question is presented in an
26 action arising under the Constitution, federal law, or treaty.
27 28 U.S.C. §§ 1331 and 1332.
28 ///

5

1  The removing party bears the burden of establishing federal
2 jurisdiction.  Ethridge v. Harbor House Rest., 861 F.2d 1389,
3 1393 (9th Cir. 1988).  Furthermore, courts construe the removal
4 statute strictly against removal.  Gaus v. Miles, Inc., 980 F.2d
5 564, 566 (9th Cir. 1992) (citations omitted).  If there is any
6 doubt as to the right of removal in the first instance, remand
7 must be granted.  See Gaus, 980 F.2d at 566.  Therefore, if it
8 appears before final judgment that a district court lacks subject
9 matter jurisdiction, the case shall be remanded to state court.
10 28 U.S.C. § 1447(c).

11  The district court determines whether removal is proper by
12 first determining whether a federal question exists on the face
13 of the plaintiff's well-pleaded complaint.  Caterpillar, Inc. v.
14 Williams, 482 U.S. 386, 392 (1987).  If a complaint alleges only
15 state law claims and lacks a federal question on its face, then
16 the federal court must grant the motion to remand.  See 28 U.S.C.
17 § 1447(c); Caterpillar, 482 U.S. at 392.  Nonetheless, there are
18 rare exceptions when a well-pleaded state law cause of action
19 will be deemed to arise under federal law and support removal.
20 They are "...(1) where federal law completely preempts state law,
21 (2) where the claim is necessarily federal in character, or
22 (3) where the right to relief depends on the resolution of a
23 substantial, disputed federal question."  ARCO Envtl. Remediation
24 L.L.C. v. Dep't of Health & Envtl. Quality of Mont., 213 F.3d
25 1108, 1114 (9th Cir. 2000) (internal citations omitted).

26  If the district court determines that removal was improper,
27 then the court may also award the plaintiff costs and attorney
28 fees accrued in response to the defendant's removal.

6

1  28 U.S.C. § 1447(c).  The court has broad discretion to award
2  costs and fees whenever it finds that removal was wrong as a
3  matter of law.  <u>Balcorta v. Twentieth-Century Fox Film Corp.</u>, 208
4  F.3d 1102, 1106 n.6 (9th Cir. 2000).

## DISCUSSION

### A.   Takings Claim

#### 1.   Relevant Law

The takings clause of the Fifth Amendment "bars Government from forcing some people alone to bear burden which, in all fairness and justice, should be borne by the public as a whole." <u>Guggenheim v. City of Goleta</u>, 582 F.3d 996 (9th Cir. 2009) (quoting <u>Lingle v. Chevron U.S.A. Inc.</u>, 544 U.S. 528 (2005)). There exist two categories of regulatory action that constitute a *per se* "taking" under the Fifth Amendment: (1) where government requires an owner to suffer a permanent physical invasion of his or her property; and (2) where a regulation completely deprives an owner of all beneficial economic use of his or her property. <u>Lingle</u>, 544 U.S. at 538 (internal citations and quotations omitted).  Outside of these two relatively narrow categories, regulatory takings challenges are governed by the standard set forth in <u>Penn Cent. Transp. Co. v. City of New York</u>, 438 U.S. 104, 124 (1978).  Federal courts have not developed a "'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons."  <u>Id.</u> at 124.

7

Several factors have been identified as having great significance in determining whether a government action merits compensation under the Fifth Amendment: (1) the economic impact on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. Id. Penn Central "turns, in large part...upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." Id. at 540.

Moreover, a federal takings claim is not ripe until two conditions are met: (1) the plaintiff has received a "final decision" regarding the development of the property; and (2) the plaintiff has been denied compensation by the state. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985). A federal takings claim is not "ripe" until a plaintiff has sought compensation through state procedures provided for doing so. Spoklie v. Montana, 411 F.3d 1051 (9th Cir. 2005). This requirement applies to both facial challenges as well as "as applied" challenges. Southern Pacific Trans. Co. v. City of Los Angeles, 922 F.2d 498 (9th Cir. 1990). When a state provides "an adequate procedure for compensation, until this procedure has been exhausted and the plaintiff denied compensation, no taking has occurred." Macri v. King County, 126 F.3d 1125 (9th Cir. 1997) abrogated on other grounds by Crown Point Dev., Inc. v. City of Sun Valley, 506 F.3d 851 (9th Cir. 2007). As ripeness is a "threshold jurisdictional question," should a court find a claim to be unripe for failing to satisfy the Williamson analysis, "the correct disposition is dismissal."

8

Southern Pacific, 922 F.2d at 508 (citing Lai v. City and County of Honolulu, 841 F.2d 301, 303 (9th Cir. 1988)).

### 2. Analysis

As an initial matter, this Court concludes that Plaintiff's allegations present an "as applied" challenge to the Defendants' conduct. This is because Plaintiff does not challenge a local government ordinance as unconstitutional on its face, but rather takes issue with the actions taken by local governmental entities in denying both his application for a conversion and a variance. (Complaint ¶ 20.) A claim is a facial challenge in circumstances where a plaintiff's grievance derives entirely from the existence of the statute itself. Hacienda Valley Mobile Estates v. City of Morgan Hill, 353 F.3d 651, 656 (9th Cir. 2003). By its very nature, a facial challenge "does not involve a decision applying the statute or regulation. Id. at 655. "As applied" challenges occur where the ordinance is not the sole basis for the challenge. Id. at 656. The distinction is critical as facial challenges are exempt from the "final decision" prong of the Williamson analysis. Id. at 655. In the instant case, because Plaintiff alleges an "as applied" challenge, both prongs of the ripeness requirement must be satisfied.

To satisfy the "final decision" requirement, a plaintiff must show that local decision-makers have been provided with an "opportunity to review at least one reasonable development proposal before...a challenge to land use will be considered ripe." Southern Pacific Trans. Co., 922 F.2d at 503.

9

1  A final decision requires at least: (1) the rejection of a
2  development plan, and (2) a denial of a variance. Kinzli v. City
3  of Santa Cruz, 818 F.2d 1449, 1454 (9th Cir. 1987). Plaintiff in
4  the instant case has clearly met this requirement. Several
5  judgments by local decision-making entities have been rendered
6  regarding the proposed conversion of the Park. (Complaint ¶¶ 14,
7  15, 16.) Plaintiff has submitted proposals, plans, and has had
8  numerous conversations with the pertinent individuals and
9  governmental bodies to establish the proposal as meaningful.
10 (Complaint ¶¶ 12, 13, 14.) Moreover, Plaintiff petitioned for,
11 and was denied, a variance. (Complaint ¶ 14.) Therefore, the
12 question turns to whether Plaintiff has met the second prong of
13 the Williamson analysis.
14     In order for federal courts to evaluate whether a local
15 entity's action constitutes an unconstitutional and uncompensated
16 taking, however, it is also necessary to determine what
17 compensation is available. Southern Pacific, 922 F.2d at 506.
18 As the Southern Pacific court explains, if a compensation claim
19 remains available, that defeats the contention that the action is
20 unconstitutional and a violation of the takings clause. Id.
21 (quoting Larson v. Domestic & Foreign Corp., 337 U.S. 682
22 (1949)). When determining whether such compensation was
23 available, courts look to the time when the alleged taking took
24 place. Id. (quoting Williamson, 473 U.S. at 194-195). It is
25 well established that California had procedures available in
26 2009, the time of the alleged taking, to compensate property
27 owners in instances of unconstitutional takings. See, e.g.,
28 Koppling v. City of Whittier, 8 Cal. 3d 39 (Cal. 1972).

10

Because Defendants removed this litigation from state court, Plaintiff was denied the opportunity to seek state reimbursement. As ripeness is a threshold jurisdictional question, Defendants cannot confer jurisdiction to this Court by removal.  Therefore, Plaintiff has yet to satisfy the requirements under the <u>Williamson</u> analysis to make its claim ripe for federal court adjudication.  Although the claim was ripe when it was originally filed in state court, it became unripe the moment that Defendants removed it.  A state action is "not complete until the state fails to provide adequate compensation for the taking." <u>Williamson</u>, 473 U.S. at 195.  In the instant case, California has not "failed" to compensate the Plaintiff.

Therefore, Plaintiff's Fifth Amendment takings claim is dismissed without prejudice for lack of jurisdiction.

**B.   Section 1983 Claim**

**1.   Relevant Law**

In addition to the unconstitutional takings claim, the Complaint also alleges that Defendants acted "under color of a statute, ordinance, regulation, custom, or usage of state law" in violating Plaintiff's "substantive due process rights." (Complaint ¶¶ 29, 30.)  By denying the proposal and the variance in an "arbitrary and capricious manner," Plaintiff contends, Defendants interfered with Plaintiff's property rights. (Complaint ¶ 28.)

///

///

11

"All as applied challenges to regulatory takings, whether based on the just compensation clause, the due process clause or the equal protection clause, possess the same ripeness requirement." Southern Pacific, 922 F.2d at 507; see also Herrington v. County of Sonoma, 857 F.2d 567, 569 (9th Cir. 1988) (holding that federal courts apply the same ripeness standards to equal protection and substantive due process claims). The Southern Pacific and Herrington decisions interpreted the Supreme Court's holding in MacDonald, supra, in which two prerequisites for stating a regulatory takings claim were established: "(1) that the regulation has gone so far that it has 'taken' plaintiff's property, and (2) that any compensation tendered is not 'just.'" 477 U.S. at 349-350 (internal citations and quotations omitted). The state's action is not complete until it fails to provide adequate compensation for the unconstitutional taking. Id. Therefore, a court is unable to determine if a municipality has failed to provide "just compensation" if it does not know what compensation it intends to provide. Id.

## 2. **Analysis**

The record establishes that Plaintiff has yet to exhaust the available state procedures. Although this matter was initially filed in the Placer County Superior Court, which is the appropriate venue, Defendants removed to this Court before Plaintiff had the opportunity to exhaust the state procedures available to compensate unconstitutional property takings.
///

12

The moment Defendants removed the matter from state court, the takings claim became unripe.  Plaintiff readily admits that it must return to state court to adjudicate this matter before a proper proceeding may take place in federal court.  (Pl.'s Mot. to Remand, 8:2-4.)

Accordingly, this Court dismisses without prejudice Plaintiff's § 1983 claim for lack of jurisdiction.

### C. Plaintiff's Additional State Claim

In addition to the federal claims, Plaintiff also requests a judicial determination of the respective rights and duties of Plaintiff and Defendants with respect to California law, Government Code § 66427.5, and the Defendants' actions denying the "will serve" letter and variance.  (Complaint ¶ 20.)  A federal court may remand pendant claims if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).  In determining such "compelling reasons," courts may consider "values of economy, convenience, fairness, and comity."  Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994).  Having dismissed both of Plaintiff's federal claims, all that remain is Plaintiff's state law cause of action.  Should Plaintiff choose to re-file the dismissed claims in state court, it would make sense in terms of judicial economy and convenience to have all claims adjudicated concurrently in the same tribunal.

Accordingly, this Court will remand Plaintiff's pendant state law declaratory relief claim.

**CONCLUSION**

Plaintiff's Fifth Amendment and § 1983 claims are unripe under the "just compensation" prong of the <u>Williamson</u> analysis. The Court accordingly dismisses said claims, without prejudice, for lack of federal jurisdiction. Moreover, Plaintiff's state cause of action for declaratory relief is REMANDED to the Placer County Superior Court for further adjudication. Because Defendants' Motion to Dismiss (ECF No. 16) has been rendered moot by the above actions, that Motion is DENIED.

Each side will bear its own fees and costs. The Clerk is directed to close the file.

IT IS SO ORDERED.

Dated: September 7, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE